Ray L. JOHNSON, Appellant,

v.

B. J. RHAY, Superintendent of Washington State Penitentiary at Walla Walla, Washington, Appellee.

No. 15941.

United States Court of Appeals Ninth Circuit.

April 29, 1959.

Ray L. Johnson, Walla Walla, Wash., in pro. per.

John J. O'Connell, Atty. Gen., Michael R. Alfieri, Asst. Atty. Gen., for appellee.

Before STEPHENS, HAMLEY, and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

Ray L. Johnson, an inmate of Washington State Penitentiary, appeals from an order of the district court denying his application for a writ of habeas corpus. The application was denied without issuance of an order to show cause, on the ground that it appeared from the application that Johnson was not entitled to the writ.[1]

Several reasons why the writ should issue were asserted in the application and are renewed here. The one principally relied upon is that applicant has been subjected to double jeopardy.

On May 16, 1955, in cause No. 32138 before the superior court of Pierce County, Washington, Johnson pleaded guilty to an information charging him with the crime of assault in the first degree armed with a deadly weapon. The trial judge could then have followed one of three courses. Pursuant to RCW 9.-95.010 he could have fixed the maximum penitentiary sentence to be served by Johnson at twenty years, and allowed the sentence to go into immediate effect. As an alternative, he could have fixed such maximum sentence, granted probation, and suspended *execution* of the sentence.[2] As a second alternative, the trial court could have granted probation and suspended *imposition* of the sentence. See RCW 9.95.210.

The trial court chose the latter course. By an order dated May 16, 1955, imposition of sentence was suspended and deferred for a period of four years. This was done upon certain terms and conditions set out in the order, one being that Johnson "spend eight months in the County Jail * * *." Johnson accepted the terms of probation and was confined in jail.

On April 13, 1956, after Johnson had been released from jail but while still under probationary supervision, he committed the crime of forgery in the first degree. On April 16, 1956, in Pierce County cause No. 32396, he pleaded guilty to an information charging this crime, and was sentenced to serve a maximum term of twenty years in the penitentiary.

On April 17, 1956, an order was entered in cause No. 32138 revoking deferment of the imposition of sentence. The revocation was based on the fact that Johnson had violated the terms of his probation. On the same day, after entry of the above order, a maximum sentence of twenty years in the penitentiary was imposed in cause No. 32138.

1. As authorized by 28 U.S.C.A. § 2243. Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830. The district court entered an order authorizing Johnson to prosecute the appeal in forma pauperis, and issued a certificate of probable cause. See 28 U.S.C.A. §§ 1915, 2253.

2. Where the sentence is allowed to go into effect, the board of prison terms and paroles fixes the duration of confinement, not exceeding the maximum sentence. See RCW 9.95.040. The granting of probation and suspension of the execution of sentence are provided for in RCW 9.95.210.

It is Johnson's contention that the imposition of this maximum sentence, after he had already been confined in the county jail eight months, subjected him to double jeopardy violative of his rights under the Fourteenth Amendment.

█ Johnson makes no attack upon the judgment and sentence on the forgery charge. It follows that if he is presently serving the sentence for the forgery conviction, his application for a writ of habeas corpus directed against the sentence for the assault conviction is premature.[3] His application is also premature if he is presently serving the sentence for the assault conviction, assuming that if the assault conviction were set aside he would still be subject to confinement under the sentence for the forgery conviction.[4]

█ The two sentences involved here are not running concurrently, since there is no provision in either of them to this effect.[5] Nor does either of them provide which sentence is to be served first. Since both convictions were obtained before either sentence was imposed, the order of sentences is governed by RCW 9.92.080 quoted in the margin.[6]

This statute seems somewhat ambiguous, since it first refers to priority of convictions and then to priority of terms of imprisonment. It appears, however, to be subject to the construction that the sentence imposed for the first conviction is to be served first, without regard to which sentence was first imposed.

While the Washington Supreme Court seems not to have passed upon this question, the board of prison terms and paroles has in Johnson's own case given RCW 9.92.080 the construction suggested above. The board gave Johnson written notice on August 20, 1956, that it had fixed his minimum term of confinement at "5 yrs & 2½ yrs C S," no express statement being made as to which sentence was being served first. Under RCW 9.95.040, the duration of confinement for one convicted of a felony while armed with a deadly weapon, where there has been no previous felony conviction, may not be less than five years. Hence the "5 yrs" confinement which is listed first in the board notice must have been on the sentence for the assault conviction—the sentence which Johnson now challenges.

If the sentence on this conviction is void, then Johnson's confinement since April 17, 1956, must be regarded as on the forgery conviction. The period of confinement fixed by the board on the forgery conviction was two and a half years. The notice also indicates that by good conduct and work record Johnson

3. McNally v. Hill, 293 U.S. 131, 51 S.Ct. 24, 79 L.Ed. 238; McNealy v. Johnston, 9 Cir., 100 F.2d 280; Pope v. Huff, 73 App.D.C. 170, 117 F.2d 779.

4. Hoffman v. United States, 9 Cir., 244 F.2d 378. It was there held that if the sentence being served is invalid, it would be deemed that the applicant was confined under the second and valid sentence as of the date of initial confinement under the first sentence. It was also tacitly held in Hoffman that good time allowances are to be taken into consideration in *determining* whether it is to be deemed that the applicant is still subject to confinement under the second count.

5. Moreover, there was no statutory authority to order concurrent sentences where, as here, the offenses were not set forth as separate counts in one information. See RCW 9.92.080. State v. Luke, 42 Wash.2d 260, 254 P.2d 718; Mullins v. Cranor, 42 Wash.2d 310, 254 P.2d 1038.

6. "Whenever a person shall be convicted of two or more offenses before sentence has been pronounced for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction shall commence at the termination of the first or other prior term or terms of imprisonment to which he is sentenced; and whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such *latter* term shall not begin until the expiration of all prior terms: *Provided* that whenever a person is convicted of two or more offenses set forth as separate counts in one indictment or information the court may, in pronouncing sentence, provide that sentences therefor shall run concurrently."

could cut this to one year and eight months. Johnson has already served longer than two and a half years and is therefore entitled to his release if the sentence on the assault conviction is void whether or not he has earned the indicated time allowance.

We accordingly hold that the application for a writ of habeas corpus is not premature.

■ This brings us to the double jeopardy question which appellant raises. On April 17, 1956, after Johnson had been confined in a county jail for eight months, he was sentenced to a maximum penitentiary term of twenty years for the same offense. If the penitentiary sentence is to be regarded as a second punishment for the same offense, Johnson would thereby have been "twice put in jeopardy of life or limb" for the same offense, as those words are used in the Fifth Amendment.[7]

■ Both the jail term which Johnson served and the penitentiary sentence thereafter imposed are provided for by statute. The punishment so provided is subject to being administered in several ways: (1) As a maximum penitentiary sentence of twenty years; (2) as a maximum penitentiary sentence of twenty years, reduced by the amount of time served in jail as a condition of probation, if probation is granted and sentence is imposed but its execution suspended; and (3) as a jail term plus a maximum penitentiary sentence of twenty years if probation is granted and the imposition of sentence is suspended upon conditions which were thereafter violated.[8]

The circumstances of Johnson's case brought him within this last category. We therefore conclude that the penitentiary sentence imposed upon Johnson for the assault conviction may not be regarded as a second punishment for the same offense. It follows that Johnson was not subjected to double jeopardy.[9]

7. That a second punishment for the same offense violates the double jeopardy provision of the Fifth Amendment, see Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 170, 21 L.Ed. 872; Oxman v. United States, 8 Cir., 148 F.2d 750, 753, 159 A.L.R. 155; Rowley v. Welch, 72 App. D.C. 351, 114 F.2d 499, 501; United States v. Whitlow, D.C.D.C., 110 F.Supp. 871, 872. There are numerous decisions which contain statements to the effect that the prohibition against double jeopardy contained in the Fifth Amendment "is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." See United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300, from which this language is quoted; Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199; Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 245, 122 A.L.R. 1436. It is not intended by statements of this kind to imply that double punishment for the same offense is not forbidden by the Fifth Amendment. What is meant is that the constitutional provision goes beyond this and also protects an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. As stated in Ex parte

Lange, supra, 85 U.S. at page 169, the common law (from which the Fifth Amendment was drawn) "not only prohibited a second punishment for the same offense, but it went further and forbid a second trial for the same offense * * *." See, also, Bartkus v. People of State of Illinois, 79 S.Ct. 676.

8. Under Washington law an order suspending the imposition of sentence is not a final judgment or sentence. State v. Farmer, 39 Wash.2d 675, 679, 237 P.2d 734, 736. It only fixes a prescribed jail term as a condition relative to probation. State v. Rose, 42 Wash.2d 509, 256 P.2d 493. For a somewhat similar treatment of the roughly analogous case of a federal prisoner being taken into custody to serve a sentence provisionally deferred, see Van Buskirk v. Wilkinson, 9 Cir., 216 F.2d 735; Dolan v. Swope, 7 Cir., 138 F.2d 301.

9. Had we found this to be double jeopardy, our inquiry would not have been at an end. The Fifth Amendment, in which the double jeopardy provision is found, is not directed to the states, but solely to the federal government. Palko v. Connecticut, 302 U.S. 319, 322, 58 S.Ct. 149, 82 L.Ed. 288. The Fourteenth Amendment, which is directed to the states, does not subject the states to the controls

Appellant also contends that he was denied due process of law in the assault criminal proceedings in that the trial court did not follow the statutory mandate in giving him probation on May 16, 1955.

RCW 9.95.240 provides that every defendant who has fulfilled the conditions of his probation may be permitted, in the discretion of the court, to withdraw his plea of guilty and enter a plea of not guilty, or the court may, in its discretion, set aside a verdict of guilty. In either case, the court may then dismiss the information or indictment, and the defendant is then released from all penalties and disabilities resulting from the conviction. This statute further provides that "the probationer shall be informed of this right in his probation papers. * * *"

Appellant asserts that the court did not inform him of his rights under RCW 9.95.240, as it was required to do. Citing State ex rel. Schock v. Barnett, 42 Wash.2d 929, 259 P.2d 404, 405, to the effect that action under this statute is void if the statute is not followed, appellant argues that he has thus been deprived of due process of law.

Since appellant did not fulfill the conditions of his probation, and was not discharged from probation prior to the termination of the period thereof, he was not entitled to receive any of the benefits available under RCW 9.95.240. But he argues in effect that if he had been advised of these available benefits he would have fulfilled the conditions of his probation and so could have taken advantage of them.[10]

 Due process does not require that one subject to a criminal sentence be advised of all of the advantages he may obtain by fulfilling the conditions of his probation. Everyone is assumed to know that advantages are to be gained by obeying the law and orders of court. This being so, the fact that the court had a statutory duty to advise appellant of these advantages added nothing to his constitutional rights under the due process clause. Consequently the failure of the court to perform that duty was not a deprivation of due process. Moreover, any defect found to exist with regard to the probation procedure would not affect the validity of the penitentiary sentence which Johnson is now serving.[11]

██ The remainder of appellant's argument is devoted to a discussion of the asserted lack of consistency by the district judge in dealing with applications for writs of habeas corpus. The principal objection seems to be that the district court ordered stricken substantial portions of Johnson's application on the ground that the stricken portions consisted of argumentative conclusions and quotations from statutes and cases.

The striking of the portions in question was entirely proper. Only the facts are to be alleged in such an application. 28 U.S.C.A. § 2242. As the district judge correctly stated in the order strik-

of the Fifth Amendment, as such. Bartkus v. Illinois, supra. Only if the kind of double jeopardy found to be involved in a particular case subjects a state defendant to a hardship so acute and shocking as to violate the concept of ordered liberty which lies at the base of all our civil and political institutions, may it be reached and barred by the Fourteenth Amendment. Palko v. Connecticut, supra, 302 U.S. at pages 326–328, 58 S. Ct. at page 152.

10. In his application for a writ Johnson stated on this point: " * * * Petitioner was of the opinion that this probation was to be in effect for the full twenty years, and he very much doubted his ability to comply with the variable yet stringent rules."

11. State ex rel. Schock v. Barnett, supra, cited by appellant, is not in point. It was there held that in granting probation and suspending sentence a judge must act within the limits of the applicable statutes, and that if he does not follow the statutory provisions "the action of the court is void." The case involved the right of a trial court to grant probation and suspend a sentence after the judgment and sentence had been affirmed on appeal. The provision relating to advice to be given by the court to one placed on probation was not involved and was not discussed.

ing parts of appellant's application: "If an applicant for [a] writ of habeas corpus wishes to present with his petition a brief or memorandum of argument and authorities * * * it should be presented as a separate document and not incorporated in the petition." [12]

Affirmed.

12. Although the district court ordered portions of the application stricken, they were not physically deleted and appear in the record before us. For the pur-

poses of this appeal we have considered the stricken portions as a part of appellant's brief on appeal.