[No. 43677. En Banc. July 1, 1976.]

*In the Matter of the Application for a Writ of Habeas Corpus of* WILLIAM D. JANSEN, *Petitioner, v.* CHARLES MORRIS, *as Secretary of the Department of Social and Health Services,* ET AL, *Respondents.*

Robert T. Farrell, Richard Emery, and Allen Ressler, for petitioner.

Slade Gorton, Attorney General, and Nate D. Mannakee, Assistant, for respondents.

HAMILTON, J.—This is an application for a writ of habeas corpus. On February 27, 1962, the State filed an information charging petitioner, William D. Jansen, with the crime of robbery (count 1) and first-degree murder committed in the course of the robbery (count 2). On May 10, 1962, a jury convicted petitioner of both crimes. The jury also entered special verdicts finding petitioner armed with a deadly weapon at the time of the commission of either offense and rejecting the death penalty as punishment for the count 2 conviction. The trial court sentenced petitioner to prison for a maximum term of 35 years on count 1 and not more than his natural life on count 2. The court ordered these sentences to run consecutively.

On September 7, 1962, respondent, Board of Prison Terms and Paroles (hereafter Board), set a minimum term of 35 years for count 1. In 1966, the Board imposed a 7½-year waivable mandatory minimum sentence for count 1, because petitioner was armed with a deadly weapon at the time of the commission of the robbery and had a prior felony conviction.[1]

On September 19, 1967, the Board ordered petitioner paroled from count 1 to count 2, effective September 14, 1967. Petitioner is now serving his sentence for the count 2 conviction in the Washington State Penitentiary. The petitioner will not be eligible for parole until January 13, 1981, 13 years, 4 months after he began serving his life sentence.[2]

---

[1] "(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years." RCW 9.95.040(2).

[2] RCW 9.95.115 provides that "[t]he board of prison terms and paroles is hereby granted authority to parole any person sentenced to

If petitioner served the sentence for count 2 before the sentence for count 1, he would now be eligible for parole, as 13 years, 4 months have elapsed since his arrest and incarceration in February 1962.[3]

At the time petitioner was convicted and sentenced, RCW 9.92.080[4] provided:

Whenever a person shall be convicted of two or more offenses before sentence has been pronounced for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction shall commence at the termination of the first or other prior term or terms of imprisonment to which he is sentenced; and whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such latter term shall not begin until the expiration of all prior terms: *Provided* that whenever a person is convicted of two or more offenses set forth as separate counts in one indictment or information the court may, in pronouncing sentence, provide that sentences therefor shall run concurrently.

Laws of 1925, 1st Ex. Sess., ch. 109, § 2, p. 168.

It was pursuant to this statute and the sequence of the counts in the information and judgment and sentence that

the penitentiary or the reformatory, under a mandatory life sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time . . ." A convicted person may accumulate up to one-third of his sentence in earned good time credits. RCW 9.95.110. Thus, the petitioner's 20 years less one-third good time sentence requires him to serve at least a 13-year, 4-month sentence.

[3]The mandatory minimum term for a first-degree murder conviction cannot be waived. RCW 9.95.040. However, the Board may parole an inmate prior to the expiration of the mandatory minimum term for robbery while armed with a deadly weapon if the inmate "has demonstrated a meritorious effort in rehabilitation and at least four board members concur in such action . . ." RCW 9.95.040. Therefore, if the petitioner served count 2 before he served count 1, he would now be eligible for parole.

[4]RCW 9.92.080 was amended by Laws of 1971, 1st Ex. Sess., ch. 295, § 1, the pertinent portion of which now provides:

"(2) Whenever a person is convicted of two or more offenses which arise from a single act or omission, the sentences imposed therefor shall run concurrently, unless the court, in pronouncing sentence, expressly orders the service of said sentences to be consecutive."

the Board determined that petitioner's confinement upon the first-degree murder conviction (count 2) should not commence to run until petitioner had served his waivable mandatory minimum term on the robbery conviction (count 1).

Petitioner first contends that the provisions of the statute and the action of the Board pursuant thereto deny him equal protection of the laws contrary to the equal protection clause of the fourteenth amendment to the United States Constitution. In this respect he asserts that persons charged with identical crimes may be subject to different punishments and parole eligibility, and that there exists no rational basis for such a distinction.

We find no merit in this contention. The statute expressly invests the trial judge with the ultimate authority to determine whether the sentences arising out of a multiple count indictment or information shall run concurrently or consecutively. Statutes which define one crime classification, *i.e.*, a felony or a misdemeanor, and permit only a variation in punishment do not violate the equal protection clause. *State v. Blanchey*, 75 Wn.2d 926, 939, 454 P.2d 841 (1969); *State v. Boggs*, 57 Wn.2d 484, 358 P.2d 124 (1961). In *State v. Blanchey, supra* at 939-40, we stated:

> This distinction between discretion in choosing the degree of the charge and discretion in fixing the sentence may seem pointless and can result in petty disputes over language. *See Olsen v. Delmore, supra* [48 Wn.2d 545, 295 P.2d 324 (1956)]. However, it results from a meeting of our two goals of treating all men equally in the guilt determination process while retaining some flexibility and individualized treatment at the punishment stage.

Each individual defendant presents a different factual context for the sentencing judge to review. The culpability of one defendant and his prior criminal involvement differ from the next defendant. These differences furnish a rational basis for varying the sentence and resultant punishment that each defendant receives. *State v. Hurst*, 5 Wn. App. 146, 486 P.2d 1136 (1971). Therefore, a statute which vests the trial judge with discretion in determining

whether multiple count sentences shall run concurrently or consecutively does not violate the equal protection clause of the Fourteenth Amendment.

■ Petitioner, pointing principally to *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956), next contends that RCW 9.92.080, in fixing the sequence in which sentences arising out of multiple count convictions are to be served, denies him equal protection of the laws because it invests the prosecuting attorney with discretion in selecting the order of the counts in a multiple count information or indictment. This is so, petitioner argues, because, where mandatory minimum terms of imprisonment are concerned, the prosecuting attorney can discriminate between various defendants and their prospective punishments by arranging the order of the counts in the information or indictment. Again, we disagree with petitioner for the primary reason that the decision as to the manner in which multiple sentences are to be served, *i.e.*, concurrently or consecutively, is left with the trial judge, not with the prosecuting attorney. *Olsen v. Delmore, supra*, is distinguishable inasmuch as such dealt with statutes which permitted charging either a misdemeanor or felony for an identical offense.

Petitioner next claims that the mandatory minimum penalties imposed pursuant to RCW 9.95.040(2) and RCW 9.95.115 should begin to run concurrently from the beginning of his confinement and not consecutively with the corresponding court-imposed maximum sentences. Thus, petitioner claims that he is eligible for parole because he has served 20 years less good time, which fulfills the mandatory minimums on both the robbery and first-degree murder convictions. Petitioner cites RCW 9.95.115 and asserts that this provision provides that if a person is confined for 20 years less one-third good time, then the Board may consider the person for parole. The language of RCW 9.95.115 does not support this position. This provision merely concerns the parole of a person sentenced "under a mandatory life sentence." It does not control a situation, such as this case, where the trial judge sentenced a person

to serve consecutively two maximum sentences incidental to which were mandatory minimum penalties.

██ An analysis of the total legislative sentencing scheme produces a result that the mandatory penalty is simply an incident of the maximum sentence for a particular crime, and it attaches to and governs the minimum term set by the Board. In Washington, certain statutes and the sentencing judge set the maximum number of years of a defendant's potential confinement. The Board sets a defendant's minimum term of confinement and determines when a defendant is paroled. In certain circumstances, the legislature enhanced the penalty for certain crimes by requiring a mandatory minimum term. The mandatory minimum represents a portion of the punishment that the legislature prescribed for the particular offense. Therefore, if multiple sentences may run consecutively, RCW 9.92.080, then a mandatory minimum, incorporated as part of each sentence, also may run consecutively. We perceive nothing in the statutory scheme or in equal protection principles which would permit or require the Board to follow a course different than it pursued here.

██ Petitioner finally contends that the Board improperly imposed a mandatory minimum sentence upon him for the robbery conviction. Before the Board may impose a "deadly weapon" mandatory minimum on petitioner, there must be a factual finding that petitioner was armed with a deadly weapon at the time of the commission of the crime involved. The special finding in the instant case concluded that petitioner was "armed with a deadly weapon at the time of the commission of either offense . . ." and petitioner contends that this special finding fails to meet the statutory requirements. Any doubt in a special verdict may be removed by referring to the record. *See State v. Tugas*, 37 Wn.2d 236, 247-48, 222 P.2d 817 (1950). The record clearly indicates that petitioner was armed with a deadly weapon at the time of the commission of the robbery.

The petition is denied.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, and BRACHTENBACH, JJ., concur.

HOROWITZ, J. (dissenting)—I must dissent for the reason that former RCW 9.92.080 as applied in the instant case has denied petitioner equal protection of the laws. That statute has lengthened, upon a completely arbitrary basis, next discussed, the time petitioner must serve in prison before being eligible for parole by almost 6 years.

The text of former RCW 9.92.080 is set out in full in the majority's opinion. That statute operated only when a defendant was convicted of at least two offenses before he was sentenced for either offense. The multiple offenses might all be charged in one information, as in this case, or in separate informations. In either instance, the statute required the multiple sentences to be served consecutively, unless the judge exercised his discretion to specifically provide they be served concurrently. The statute, however, did not give the trial court the discretion to determine, when sentences are to be served consecutively, which sentence was to be served first. Rather, the statute itself set out the order to be followed: "the imprisonment to which he is sentenced upon the second . . . *conviction* shall commence at the termination of the first . . . term of imprisonment . . ." (Italics mine.) As stated in *Johnson v. Rhay*, 266 F.2d 530, 532 (9th Cir. 1969). "This statute [former RCW 9.92.080] . . . appears . . . to be subject to the construction that the sentence imposed for the first conviction is to be served first, without regard to which sentence was first imposed."

In most situations, the order in which the terms of the two consecutive sentences are served is of no consequence to the defendant. The parole board may grant parole at any time during either sentence. RCW 9.95.040, .110. However, when one of the convictions is for a crime carrying a mandatory life sentence, the order in which the sentences are served is crucial. The parole board is not allowed to parole a person who is sentenced under a mandatory life sentence

until that person has been confined for 20 years less earned good time (a minimum period of 13 years, 4 months). RCW 9.95.040, .115. A defendant who serves his mandatory life sentence first will be eligible for parole as early as 13 years, 4 months after incarceration. However, a person who serves his mandatory life sentence second (as in the instant case) will not be eligible for parole until he has (1) served the term of the first sentence or been paroled from it to the mandatory life sentence, and (2) served the mandatory life sentence of at least 13 years, 4 months.

Thus, in this case, former RCW 9.92.080 created two classifications affecting parole eligibility. The first consisted of those defendants who served their mandatory life sentence first and were then immediately eligible for parole. The second classification consisted of those defendants who served their mandatory life sentence second (or later), and were not eligible for parole until after those defendants in the first classification became eligible.

Equal protection requires that a statutory "distinction . . . have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966) (civil commitment statute). When the statutory order in which consecutive sentences must be served affects eligibility for parole, the statutory basis for the order of service must be one that bears a rational relationship to parole eligibility. Clearly, the order of conviction is not a rational basis for imposing different parole eligibility requirements between defendants convicted of identical crimes.

Moreover, the classification created by former RCW 9.92.080 is dependent solely upon the chronological order of conviction, which, as a practical matter, is set by the prosecutor's numerical order of the counts in the information or indictment. The effect of the statute is to give the prosecutor the discretion, by the order in which he places the counts, to vary to a significant degree the punishment given defendants such as petitioner for precisely the same conduct. Thus, this court held in *Olsen v. Delmore*, 48 Wn.2d

545, 550, 295 P.2d 324 (1956), that a penalty statute which confers such discretion under analogous circumstances upon the prosecutor is violative of equal protection.

The trial court does not have the power to change, on its own motion, the order of the counts in the information to nullify this discretion of the prosecutor. An information, of course, is "a written accusation of crime preferred by a public prosecuting officer without the intervention of a grand jury." *Ballentine's Law Dictionary* 621 (3d ed. 1969). The trial court has only the authority to "permit" amendment of the information. CrR 2.1(d). This language assumes the motion to amend will be made by the prosecutor. The trial court cannot, at least without acquiescence by the prosecutor, order an amendment of an information on its own motion.

> We know of no authority for a superior court, on its own motion and over the objection of the People, to "amend" an information properly filed.

*People v. Clark*, 17 Cal. App. 3d 890, 898, 95 Cal. Rptr. 411 (1971). A contrary rule would interfere with the prosecutor's discharge of trial responsibilities imposed upon him by law.

Therefore, in accordance with the long-established rule that a statute nondiscriminatory on its face may be applied in such a way as to violate equal protection (*Yick Wo v. Hopkins*, 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886)), former RCW 9.92.080 is unconstitutional in its application to defendant.

It is no answer to this complaint of petitioner, as the majority suggests, that "the manner in which multiple sentences are to be served, *i.e.*, concurrently or consecutively, is left with the trial judge, not with the prosecuting attorney." The vice of the statute was not the power vested in the court to require that sentences be served concurrently or consecutively. The vice of the statute was that it bound the court to impose consecutive sentences in the order of conviction, and thereby arbitrarily classified some defend-

ants as eligible for parole earlier than other defendants convicted of identical crimes.

It is worth noting that the present RCW 9.92.080 no longer sets the order of service of consecutive sentences, and appears to leave this decision to the trial court.

To avoid the effect of the unconstitutional application of RCW 9.92.080 it would be necessary petitioner be made eligible for parole as of June 1975 (13 years, 4 months after petitioner's incarceration). Whether parole will be granted is determined by the Board of Prison Terms and Paroles. I would, therefore, grant the writ of habeas corpus to the extent necessary to grant parole eligibility as stated.

UTTER, J., concurs with HOROWITZ, J.

Petition for rehearing denied October 14, 1976.