[No. 1878–3.   Division Three.   April 19, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID CLAYTON EDWARDS, *Appellant.*

356

*Richard L. Cease, Public Defender,* and *Richard W. Sanger, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Gregory G. Staeheli, Deputy,* for respondent.

McINTURFF, J.—David Clayton Edwards appeals his jury conviction of second–degree assault, RCW 9.11.020, with a firearm, RCW 9.41.025, which is a deadly weapon, RCW 9.95.040. We affirm.

Mr. Edwards was arrested on November 6, 1975, during a Spokane police investigation of a shooting incident. He had allegedly fired six shots from a pistol at an occupied car.

The principal objections at trial, renewed on appeal, deal with application and operation of RCW 9.41.025 and RCW 9.95.040, defining penal consequences arising from the use of a "firearm" and "deadly weapon" in commission of the assault.[1]

Mr. Edwards first argues on this appeal that the jury was given insufficient definition of the terms deadly weapon and firearm to allow an informed finding of fact upon his possession of these items during the assault, and thereby allowing application of the penal consequences of RCW 9.41.025 and RCW 9.95.040. Deficient jury instructions are said to have resulted in a denial of due process of law, citing *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972).

Applications of RCW 9.41.025 and RCW 9.95.040 do require certain preliminary findings. RCW 9.41.025 requires a preliminary finding that the underlying crime was committed "while armed with, or in the possession of any fire-

---

[1]RCW 9.41.025:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;"

RCW 9.95.040:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

". . .

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas."

arm." Firearm is given no statutory definition.[2] In contrast, RCW 9.95.040 requires for its application a preliminary finding that the accused was "armed with a *deadly weapon* at the time of the commission of his offense." (Italics ours.) By further definition in the same statute, deadly weapon includes in relevant part, ". . . pistol, revolver, or any other firearm . . ."

Here, the jury was instructed by the court as follows:

INSTRUCTION No. 13

If you find the defendant guilty of SECOND DEGREE ASSAULT, as charged in the Information, you will then be required to answer whether the evidence in this case establishes beyond a reasonable doubt that DAVID C. EDWARDS was armed with a deadly weapon at the time of the commission of the offense, which is also a firearm.

With respect to answering these interrogatories, you are instructed that the words *'deadly weapon' shall include pistol, revolver, or other firearm.*

*A firearm is a gun, pistol, revolver or other weapon from which a projectile is fired by gunpowder.*

This definition of 'deadly weapon' shall apply only to answering that interrogatory.

SPECIAL VERDICT AS TO DEADLY WEAPON

If you find that the defendant, DAVID CLAYTON EDWARDS, is guilty of Second Degree Assault as set out in the Information, it then will be your duty to determine whether or not the defendant, DAVID CLAYTON EDWARDS, was armed with a firearm, which is a deadly weapon, at the time of the assault.

For the purpose of answering this interrogatory, the terms 'firearm' and 'deadly weapon' are defined for you in Instruction No. 13.

Question: Was the defendant, DAVID CLAYTON EDWARDS, armed with a firearm, which is a deadly weapon, at the time of the assault as charged in the Information in this case?

Answer Yes or No.

Answer: *Yes.*

(Italics ours.)

■ By the second sentence in the special verdict, it is apparent the court intended both firearm and deadly

---

[2]*See* RCW 9.41.010—"Short firearm" defined.

weapon to be defined for the jury in instruction No. 13. Instruction No. 13 does define deadly weapon by that language of RCW 9.95.040 ("pistol, revolver, or other firearm"), made applicable by evidence at trial. In general, an instruction which follows the words of a statute is proper if understandable without further explanation.[3] We recognize no deficiency in the statutory definition of deadly weapon as set forth in instruction No. 13, for the language is understandable and self-defining to persons of ordinary intelligence.[4]

Firearm is also defined in instruction No. 13. This definition ("gun, pistol, revolver, or other weapon from which a projectile is fired by gunpowder") is a standard English dictionary meaning, reflecting no definitional error.[5]

■ If the term firearm is one of common use and understanding, definition by the court would be unnecessary.[6] But because definition language did nothing to obscure that common understanding, no prejudice to Mr. Edwards resulted.[7] In sum, both terms were given sufficient definition by the court to allow application of the penal consequences of RCW 9.41.025 and RCW 9.95.040.

In his second assignment of error, Mr. Edwards contends that RCW 9.41.025 and RCW 9.95.040 permit the State to seek varying punishments for the same criminal act (use of a pistol), thereby denying him equal protection.

---

[3]*State v. Whittier,* 13 Wn. App. 293, 296, 535 P.2d 847 (1975).

[4]*State v. Dana,* 73 Wn.2d 533, 537, 439 P.2d 403 (1968); *State v. Hill,* 10 Wn. App. 851, 854, 520 P.2d 946 (1974); *State v. Johnson,* 7 Wn. App. 527, 539, 500 P.2d 788 (1972), adopted 82 Wn.2d 156, 508 P.2d 1028 (1973).

[5]*See Webster's Third New International Dictionary* (1969).

[6]*Seattle v. Richard Bockman Land Corp.,* 8 Wn. App. 214, 217, 505 P.2d 168 (1973).

[7]*See State v. Cushing,* 17 Wash. 544, 560, 50 P. 512 (1897).

A review of the statutes involved reveals a vesting in the prosecutor of charging discretion which, in proper combination, will insure a mandatory minimum term of incarceration for a convicted defendant. RCW 9.41.025 deprives the trial court of sentencing discretion when the applicable section of that statute is properly alleged and proven. The court may not suspend or defer sentence, but must order incarceration for the specified statutory period. In contrast, RCW 9.95.040 deprives the Washington Board of Prison Terms and Paroles of discretion to grant an early parole by again mandating a minimum term. Limitation of court discretion cannot prevent early release by the board, nor can limitation of board discretion prevent granting of probation or suspension by the court. But proper allegation and proof upon both statutes will insure mandatory minimum incarceration. Possible punishment will thus vary according to sections charged by the prosecutor.

█ In support of his argued denial of equal protection, Mr. Edwards quotes *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956):

A statute which prescribes different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations is violative of the equal protection clause of the fourteenth amendment of the United States constitution.

But it is apparent from further reading of *Olsen* that the court did not find a denial of equal protection through statutory authorization of varying punishments for the same criminal act. The above quote cannot be read in isolation. Denial of equal protection was found to arise only through permitted prosecution of the same criminal act under different criminal classifications, *i.e.,* felony or

misdemeanor.[8] "Statutes which define one crime classification, *i.e.,* a felony or a misdemeanor, and permit only a variation in punishment do not violate the equal protection clause."[9]

Courts of this state have thus recognized that the same crime may be committed in ways warranting harsh or lenient punishment. A prosecutor has the discretion to weigh the severity of the offense, criminal propensities of the accused, as well as the past criminal record of the accused, in seeking an appropriate punishment.[10] Equal protection does authorize such unequal treatment upon a rational basis. Statutes authorizing varying punishments for the same criminal act do rest upon the rational distinction between motives and methods of commission of the crime. The constitution does not require this inequality be treated as equal.[11]

Here, Mr. Edwards was prosecuted for second–degree assault, a felony, but was subjected to possible varying punishments. Because he was subject to prosecution under only one criminal classification, a felony, the case falls outside the rule of *Olsen,* resulting in no denial of equal protection.

To the extent Mr. Edwards has argued a further denial of equal protection through discriminatory application of RCW 9.41.025 and RCW 9.95.040, the record fails to reflect the presence of any arbitrary action or willful intent by the

---

[8]*State v. Boggs,* 57 Wn.2d 484, 490, 358 P.2d 124 (1961); *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956).

[9]*Jansen v. Morris,* 87 Wn.2d 258, 261, 551 P.2d 743 (1976).

[10]*State v. Thompson,* 16 Wn. App. 883, 886, 559 P.2d 1370 (1977); *State v. Nixon,* 10 Wn. App. 355, 359, 517 P.2d 212 (1973).

[11]*Tigner v. Texas,* 310 U.S. 141, 147, 84 L. Ed. 1124, 60 S. Ct. 879, 130 A.L.R. 1321 (1939).

prosecutor to discriminate against Mr. Edwards or any group of which he is a part.[12]

In his third assignment of error, Mr. Edwards argues the court erred in refusing to instruct the jury upon penal consequences of their special verdict. It is urged the jury was, in effect, asked what punishment Mr. Edwards should receive without proper instruction.

■ The law of Washington is to the contrary. "The question of the sentence to be imposed by the court is never a proper issue for the jury's deliberation, except in capital cases."[13] It is the jury's function to decide the guilt or innocence of the accused, free of prejudice aroused by knowledge of possible penalty. Instruction to the jury upon penal consequences of use of a firearm or deadly weapon was properly refused by the court.

In his final assignment of error, Mr. Edwards argues he was denied due process of law when the court admitted evidence at trial derived from an alleged impermissibly suggestive identification procedure.

■ The existence of irreparable prejudice to an accused from a suggestive identification procedure is a factual question, to be determined case by case from the totality of circumstances.[14] In the present case, it is contended a police detective placed his pen on number three, Mr. Edwards' number in the lineup, thereby suggesting to the complaining witness a selection. But the complaining witness testified he does not recall a pen being placed on any number. The claimed attempt by police at suggestion was unsuccessful. There was no denial of due process upon these facts, making evidence derived from the identification procedure admissible.[15]

---

[12]*State v. Lee*, 87 Wn.2d 932, 936, 558 P.2d 236 (1976); *State v. Nixon*, 10 Wn. App. 355, 358, 517 P.2d 212 (1973).

[13]*State v. Bowman*, 57 Wn.2d 266, 271, 356 P.2d 999 (1960); *see State v. Young*, 76 Wn.2d 551, 556–57, 458 P.2d 8 (1969).

[14]*Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Hewett*, 86 Wn.2d 487, 494–95, 545 P.2d 1201 (1976).

[15]*Neil v. Biggers*, 409 U.S. 188, 198, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

Judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied July 28, 1977.

Review denied by Supreme Court February 3, 1978.