[No. 7921-2-I.   Division One.   August 3, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. RODERICK W. STOUDAMIRE, *Appellant.*

---

*George Cleve Haynes,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Lord, Deputy,* for respondent.

RINGOLD, J.—Defendant Roderick Stoudamire appeals from the judgment and sentence imposed upon conviction of two counts of assault in the first degree and one count of

murder in the first degree, each while armed with a deadly weapon. The trial court did not commit reversible error and we affirm.

In juvenile court Stoudamire, then age 15, stipulated that the State could establish a prima facie case that he committed two offenses of first degree assault and one of first degree murder arising from three incidents in Seward Park on August 7, 8, and 9, 1978. The homicide was committed with a knife. The juvenile court declined jurisdiction in part because "it was not probable that there exists within the juvenile system a sufficiently secured institution in which to place the respondent or one in which he would receive a proper treatment program."

At his first superior court trial, Stoudamire pleaded not guilty by reason of insanity. The jury, instructed as to the consequences of such an acquittal, failed to reach a verdict. At his second trial such an instruction, though requested, was not given and Stoudamire was convicted. Defense counsel called a witness who had encountered Stoudamire in Seward Park about the time he committed the murder. This witness testified that during their minute and a half encounter, he observed that Stoudamire's body was jerking strangely, that his gait was irregular and disjointed, and that his eyes were rolled back in his head. The trial court disallowed this witness' testimony that Stoudamire looked insane on the basis that this witness had not had sufficient opportunity to observe Stoudamire to be able to reach a conclusion as to Stoudamire's sanity.

The jury was taken for a view of the Seward Park area where the crimes occurred. The jury was not instructed that the deadly weapon allegation had to be proved beyond a reasonable doubt, although no such instruction was proposed and no objection lodged against its absence. Stoudamire was convicted of all three counts and the jury returned a special verdict as to each deadly weapon allegation finding that he was so armed.

ISSUES

1. Did the juvenile court judge err in failing to indicate in his findings and conclusions supporting his declination of juvenile court jurisdiction that such declination serves the best interests of the child?

2. Must a jury be instructed as to the consequences of acquittal by reason of insanity?

3. Did the trial court err in permitting the jurors to view the scene of the crime?

4. Did the trial court err in disallowing the testimony of the witness who encountered Stoudamire in Seward Park on the morning of the murder?

5. Did the trial court err in failing to instruct the jury regarding the burden of proof for the deadly weapon allegation?

JUVENILE COURT DECLINATION

Stoudamire contends that the juvenile court must consider the best interests of the child in deciding whether to decline jurisdiction, *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969), and that here the trial court considered only the interests of society. The State asserts that the trial court did in fact consider the best interests of Stoudamire in declining jurisdiction.

In its findings the trial court stated that "it is not probable that there exists within the juvenile system a[n] . . . institution . . . in which . . . [the defendant] would receive a proper treatment program." This finding comports with the requirement that the court consider the best interests of the child in declining jurisdiction. *State v. Williams, supra.*

INSTRUCTION REGARDING CONSEQUENCE
OF ACQUITTAL

Pointing out that the defense of mental irresponsibility is constitutionally mandated, *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), and that due process requires fundamental fairness, *Lisenba v. California,* 314 U.S. 219, 236,

86 L. Ed. 166, 62 S. Ct. 280 (1941), Stoudamire contends that the jury ought to be instructed regarding the consequences of an acquittal by reason of insanity. He argues that the jury may be deterred from returning such an acquittal because they might feel that the defendant will be set free. A. Goldstein, *Insanity Defense* (1967). Stoudamire analogizes the insanity defense to the death penalty and urges that the consequences must be explained to the jury. RCW 10.94.020(3) requires that the jury be told of the consequences of the death penalty.

Stoudamire further asserts that instructing the jury as to the consequences of an acquittal by reason of insanity in some cases, while not in others, violates equal protection. *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

The State rejoins that jury instructions are sufficient if they permit a party to argue his theory of the case, *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968), and that the defendant here had ample opportunity to explore and argue the consequences. The State contends that *State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977), is dispositive of the issue whether such an instruction is required. Furthermore, the State argues that to instruct a jury regarding the consequences of an acquittal would run counter to the well–established principle that juries adjudge guilt or innocence by the evidence in the case and without regard to extraneous matters. *State v. Ragan,* 22 Wn. App. 591, 595, 593 P.2d 815 (1979).

In *McDonald,* at page 270, the court held:

The proposed instruction informed the jury that the defendant would be hospitalized at one of the state's facilities for the criminally insane until the court determined he should be released. We find no error in refusing the proposed instruction. Although members of this court have, from time to time, urged instructions similar to that proposed by defendant, a majority of the court has not concurred. For example, *see State v. White,* 60 Wn.2d 551, 602, 374 P.2d 942 (1962), Hunter, J., concurring in part and dissenting in part. The majority of states

neither requires nor suggests that the jury be told the consequences of their findings regarding insanity. W. LaFave & A. Scott, *Criminal Law* 316 (1972); Morris, *Criminal Insanity*, [43 Wash. L. Rev. 583 (1967–68)].

*McDonald* is controlling. The trial court did not err in failing to instruct the jury regarding the consequences of acquittal by reason of insanity.

## JURY VIEW OF CRIME SCENE

Stoudamire next contends that the trial court erred by permitting the jury to view the crime scene because the prejudicial effect outweighed the probative value. *State v. Tikka*, 8 Wn. App. 736, 509 P.2d 101 (1973). The State responds that whether to permit a jury view of the crime scene is within the sound discretion of the trial court, *State v. Davis*, 12 Wn. App. 288, 290, 529 P.2d 1157 (1974), and that the trial court's discretion was not abused here.

A jury view of a crime scene is a means of helping the jury to understand the evidence, and is not itself evidence. *Riblet v. Ideal Cement Co.*, 54 Wn.2d 779, 785, 345 P.2d 173 (1959). Whether to allow such a view is discretionary with the trial court, reviewable only for abuse. *State v. Davis, supra.* The defendant points out no prejudice here, and we are unable to perceive any abuse of discretion in permitting the jury view; it was helpful to a comprehension of the testimony. The trial court did not err in permitting the jury to view the scene of the crimes.

## EXCLUDED TESTIMONY

Stoudamire argues that the trial court erred by not allowing Dr. Francis X. Allard, a former linguistics professor, from testifying regarding Stoudamire's mental state shortly after the commission of the murder. The trial court sustained the State's objection to Dr. Allard's opinion testimony on the basis that Dr. Allard had not had sufficient time to formulate an opinion on that subject. Stoudamire argues that the peculiarity of the behavior outweighed the brevity of Allard's observation.

The State asserts that a trial court's decision whether to

allow a nonexpert witness to testify regarding a defendant's mental state is discretionary, and that the trial court did not abuse its discretion here.

■ In *State v. Wilkins,* 156 Wash. 456, 461, 287 P. 23 (1930) the Supreme Court stated:

> [N]onexpert witnesses or lay witnesses, in order to qualify to testify on the question of the insanity or mental irresponsibility of the defendant, must show not only that they had adequate opportunity for observing such person, but must also testify in a general way, at least, as to the peculiar facts and circumstances on which they base their conclusions.

The court went on to indicate that such rulings are within the discretion of the trial court. *Wilkins,* at 462–63. *See also State v. Crenshaw,* 27 Wn. App. 326, 333, 617 P.2d 1041 (1980), *review granted,* 95 Wn.2d 1006 (1981). Here the trial court excluded Allard's testimony because he did not have sufficient time to observe Stoudamire to formulate an opinion. Despite the severity of the symptoms Stoudamire was exhibiting, we cannot say that there is "a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court did not abuse its discretion.

### DEADLY WEAPON

Finally, Stoudamire argues that the trial court erred by failing to instruct the jury that the existence of a deadly weapon is a fact that must be proved beyond a reasonable doubt. *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980). The State responds that this issue was not raised at trial, and therefore cannot be reviewed on appeal.

■ In *Tongate* the Supreme Court did not state whether the deadly weapon issue is of constitutional stature raisable for the first time on appeal. In *Tongate,* however, the Supreme Court rejected a distinction between the proof required for elements of an offense, which is beyond a reasonable doubt by constitutional mandate, *In re Winship,*

397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), and the proof required for a sentence enhancement provision. Basing its reasoning in part on the constitutional authority of *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), the court held that the jury must be instructed that the State must prove the existence of a deadly weapon beyond a reasonable doubt. In *State v. Hall,* 95 Wn.2d 536, 540, 627 P.2d 101 (1981), the Court noted that the *Tongate* "issue was not raised by exception in the trial court. Nevertheless, we address the allegation because defendant asserts the violation of a fundamental constitutional right." We conclude, therefore, that the issue is of constitutional stature and may be raised for the first time on appeal.

As in *Hall,* however, the error here is harmless.

> While RCW 9.95.040 requires the presence of a deadly weapon *in fact* in order for the sentence enhancement provisions to operate under *Tongate* and the same would appear to be true of a firearm under RCW 9.41.025, there is no question of their use in the instant case. No real issue is raised in this regard. It is undisputed that guns were in fact seen, guns were in fact used and real bullets were in fact fired.

*State v. Hall, supra* at 540. *Accord, State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981).[1]

Although the defendant in this case pleaded not guilty as well as not guilty by reason of insanity, he did not dispute the State's allegation regarding the existence of a deadly weapon. Defense counsel stated:

> As the State knows, I have no witness whatsoever that bears on whether the defendant committed this act, no alibi witness or anything like that. *My case is purely on the insanity issue. . . .*
> It should be obvious to anyone.

(Italics ours.) Since as in *State v. Hall, supra,* there was no

---

[1]After oral argument of the instant case on January 21, 1981, an order was entered staying this appeal until 30 days after filing of the opinion in *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). The opinion was filed May 21, 1981.

factual dispute regarding the existence of a deadly weapon this court can say that the trial court's error in failing to instruct the jury regarding the standard of proof for the deadly weapon allegation was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

The judgment and sentence is affirmed.

JAMES, C.J., and DURHAM, J., concur.

Reconsideration denied September 10, 1981.

Review denied by Supreme Court November 6, 1981.