[No. 8838–6–I.   Division One.   October 26, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. ISAAC
LEE PAM, *Appellant*.

*Rosemary Bordlemay* and *Mark Leemon* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Joanne Y. Maida* and *Alfred Matthews, Deputies,* for respondent.

JAMES, C.J.—Isaac L. Pam appeals his conviction at jury trial for first degree robbery while armed with a deadly weapon, and second degree assault while armed with a deadly weapon and a firearm. We affirm.

Pam was identified as one of two men who robbed a Schuck's Auto Supply store in Seattle on July 10, 1979. Four witnesses testified that one of the robbers carried a gun or shotgun. One witness recognized Pam because both he and Pam had been incarcerated in the King County jail at the same time. He called out to Pam, who pointed the weapon at him and warned him to "get away" before fleeing the scene. No shots were fired. The weapon fell apart as the robber was running away. Police recovered the wooden forestock of "what appeared to be a shotgun," as one officer testified. The remainder of the weapon was not introduced in evidence.

Pam first contends his conviction must be reversed because the trial judge failed to instruct the jury that the deadly weapon and firearm findings must be made beyond

a reasonable doubt, as required by *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980). Pam neither requested appropriate instructions nor otherwise raised the issue at trial.

■ Our Supreme Court has not yet determined if this error may be raised for the first time on appeal, finding it unnecessary to reach the constitutional issue where failure to so instruct was harmless beyond a reasonable doubt. *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981); *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). We are likewise persuaded the error here was harmless beyond a reasonable doubt.

The State must prove, beyond a reasonable doubt, the existence of facts which increase a defendant's penalty. *State v. Tongate, supra.* Thus, the State must prove the presence of a deadly weapon *in fact* in order to permit a special finding that the defendant was armed with a deadly weapon under RCW 9.95.040. A defendant cannot be so found if the evidence establishes only that he was armed with a gun–like, but nondeadly, object. *State v. Tongate, supra.* Under RCW 9.41.025, the State must prove the presence of a firearm, *i.e.,* "a weapon from which a projectile may be fired by an explosive such as gun powder." WPIC 2.10. The statute applies even though the weapon was not loaded at the time of the incident. *State v. Hattori,* 19 Wn. App. 74, 573 P.2d 829 (1978). But a gun–like object incapable of being fired is not a "firearm."

■ Here, four eyewitnesses testified that Pam was armed with a gun or shotgun. One witness testified that the robber pointed a shotgun at him and warned him to "get away." The sole issue raised by Pam's defense was the identity of the robber. No controverting evidence was offered which might support an inference that Pam carried only a gun–like object. As in *State v. Claborn, supra* at 633, "There is absolutely no evidence [that the defendant was not so armed], and this was never a contested issue at trial." A reasonable doubt is a doubt for which a reason based upon the evidence exists. *State v. Tanzymore,* 54

Wn.2d 290, 340 P.2d 178 (1959); WPIC 4.01. There being no evidence which would support a reasonable doubt as to whether Pam was armed with a real gun, we conclude that the failure to specifically instruct on the State's burden of proof with respect to the special weapons verdicts was harmless error. *State v. Hall, supra; State v. Claborn, supra.*

■ The trial judge denied a motion in limine by Pam to exclude evidence of his prior convictions for impeachment purposes. As a result of this ruling, Pam elected not to testify. Pam first contends that the ruling violated ER 609. We do not agree.

ER 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to ' the defendant, . . .

Determination of admissibility of evidence for impeachment purposes is a matter within the sound discretion of the trial judge, *State v. Thompson*, 95 Wn.2d 888, 632 P.2d 50 (1981); *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980). The trial judge's determination will not be reversed absent a clear showing of abuse of discretion. *State v. Thompson, supra.*

Here, the trial judge was aware that the probative value of the evidence must be weighed against prejudicial effect under ER 609(a). Neither the robbery nor the narcotics conviction entailed acts of violence, short temper, or combative nature as to which the prejudicial effect would most likely outweigh any probative value for credibility. Neither type of conviction is unrelated to the defendant's capacity for truth and veracity. Moreover, both parties emphasized the importance of Pam's testimony and the likelihood that his testimony would be the only exculpatory evidence

offered. As our Supreme Court has stated, the foremost factor in weighing probative value against prejudicial effect

> is a comparison of the importance that the jury hear the defendant's account of events with the importance that it know of his prior conviction. . . .

(Citations omitted.) *State v. Thompson, supra* at 891, quoting *State v. Alexis, supra* at 19. The trial judge concluded that, given the importance of Pam's credibility as a witness, the probative value of these convictions exceeded the potential prejudice to Pam. The trial judge neither fashioned a per se rule favoring the admission of such evidence nor abused his discretion in balancing the probative value of the convictions against their prejudicial effect.

Pam also contends the ruling was erroneous because it permitted the State to offer evidence of prior convictions for impeachment purposes where such convictions were not proven by the State to be constitutionally valid. We do not agree.

Unlike *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), upon which Pam relies, the allegedly invalid convictions were not sought to be used to establish an element of the offense. Rather, the convictions were directed toward impeaching Pam if he testified. Consequently, "the validity of the guilty plea upon which the conviction was based goes to a purely collateral matter; that is, the credibility of the witness." *State v. Thompson, supra* at 895. A conviction based upon a counseled guilty plea is prima facie reliable for impeachment purposes. *State v. Thompson, supra.*

Here, Pam was represented by counsel when he pleaded guilty to forgery in 1969 and to violation of the Uniform Controlled Substances Act in 1974. There is no contention that his 1968 robbery conviction was constitutionally invalid. These convictions were thus prima facie reliable and could be used for impeachment purposes. *State v. Thompson, supra.*

If Pam desired to prevent the use of these convictions for impeachment purposes, it was his burden to

establish the existence of facts sufficient to show that a constitutional violation occurred which bears upon the reliability of the conviction. *State v. Roland,* 379 So. 2d 721 (La. 1979); *State v. Vincent,* 35 N.C. App. 369, 241 S.E.2d 390 (1978); *Clayton v. Haynes,* 517 F.2d 577 (4th Cir. 1975); *Potts v. Estelle,* 529 F.2d 450 (5th Cir. 1976). Because there was no evidence affirmatively showing that the challenged convictions are constitutionally invalid, and because their prima facie reliability is established by the presence of counsel, we conclude the trial judge did not err in denying the motion in limine.

██ Pam next contends the trial judge erred in allowing an eyewitness to testify that he recognized Pam because they had been incarcerated in the King County jail at the same time. Pam argues that the prejudicial effect of this evidence of other crimes, wrongs, or acts substantially outweighed its probative value and was therefore inadmissible under ER 403. We do not agree.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity, . . .

ER 404(b). Such evidence may be necessary to make the testimony understandable to the jury. *See generally* 2 J. Weinstein & M. Berger, *Evidence* ¶ 404[15] (1980). If such evidence is relevant to show identity, it is admissible if its probative value is greater than the likelihood of unfair prejudice. ER 403; *State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979); *State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970). This is a question for the sound discretion of the trial judge. *State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382 (1973).

Here, identity of the armed robber was the principal issue at trial. The eyewitness did not identify Pam when he was first shown a photo montage. He testified that he recognized Pam's picture but was reluctant to involve himself because he had been in jail and in the penitentiary and he

did not want to be labeled a "snitch." He recognized Pam because he had seen him before in jail. Defense counsel cross–examined on the identification issue. The reliability of the eyewitness' identification was best understood in a context which adequately apprised the jury of the witness' opportunity to observe and the basis of his identification. The trial judge did not err.

We have considered Pam's remaining contentions. Each has, however, been resolved contrary to the position taken by Pam in controlling decisions of our Supreme Court and the Court of Appeals, and we consider additional discussion to be unnecessary.

The judgment and sentence are affirmed.

DURHAM, J., concurs.

RINGOLD, J. (dissenting)—Too often, with unreflecting alacrity, courts are inclined to dispose of difficult issues as "harmless error." The majority, under that rubric, has denied basic constitutional guaranties of the defendant. I therefore dissent.

### DEADLY WEAPON AND FIREARM FINDINGS

The issue here is whether the special findings with respect to the deadly weapon and firearm must be stricken because the trial court did not instruct the jury that such findings require proof beyond a reasonable doubt. This is a fundamental constitutional question that we will consider when raised for the first time on appeal. *State v. Stoudamire,* 30 Wn. App. 41, 631 P.2d 1028 (1981).

As conceded by the majority, the omission of the instruction was error under the holding in *State v. Tongate,* 93 Wn.2d 751, 756, 613 P.2d 121 (1980), wherein the court explained:

> The State argues in the alternative that the general instructions on the presumption of innocence and the State's burden to prove all elements of the underlying offense beyond a reasonable doubt were sufficient for the special verdict instruction as well. We do not agree. The

special verdict is a separate finding made after the guilt–determining stage of the jury's deliberations. It cannot be assumed that a reasonable jury, in the absence of an explicit instruction on the standard of proof, will understand the applicable standard to be applied to the separate finding where, as here, the fact to be found is not an element of the crime as charged.[1]

The majority opinion also correctly states that evidence of the presence of an inoperable weapon will not satisfy the State's burden of proof. The weapon must be "deadly in fact," and the firearm must be a weapon from which a projectile may be fired by an explosive. *State v. Tongate, supra; see State v. Edwards,* 17 Wn. App. 355, 563 P.2d 212 (1977). My colleagues conclude that there is no evidence that Pam possessed an object that was an inoperable firearm, and for that reason they find the error harmless beyond a reasonable doubt. This conclusion is directly contradicted by the facts appearing in the second paragraph of the majority opinion:

> Pam was identified as one of two men who robbed a Schuck's Auto Supply store in Seattle on July 10, 1979. Four witnesses testified that one of the robbers carried a gun or shotgun. One witness recognized Pam because both he and Pam had been incarcerated in the King County jail at the same time. He called out to Pam, who pointed the weapon at him and warned him to "get away" before fleeing the scene. No shots were fired. The weapon fell apart as the robber was running away. Police recovered the wooden forestock of "what appeared to be a shotgun," as one officer testified. The remainder of the weapon was not introduced in evidence.

Unlike the harmless error cases cited by the majority, *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981), and *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981), the suspects here fired no shots and the police found no bullets. While there was sufficient evidence to permit a rational fact finder

---

[1]Neither the possession of a firearm nor the possession of a deadly weapon are necessary elements of the crimes allegedly committed by Pam, *i.e.,* first degree robbery and second degree assault. *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980); *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979).

to conclude that the weapon was "deadly in fact" and was a firearm capable of firing real bullets, that is not the issue. *See State v. Evans,* 96 Wn.2d 1, 5, 633 P.2d 83 (1981) (Brachtenbach, C.J., concurring). The evidence was also sufficient for a rational trier of fact to conclude that a shotgun that fell apart was inoperable and did not amount to a "deadly weapon in fact" or a firearm from which a projectile could be fired. Certainly, with proper instructions, a rational jury could have had a reasonable doubt as to the operability of the alleged shotgun. The majority strains credibility by flatly declaring that there is absolutely no evidence that defendant was armed with an inoperable gun. If this were the only reversible error, I would strike the firearm and deadly weapon findings and remand for resentencing.

### PRIOR CONVICTIONS

I have no quarrel with the trial court's exercise of its discretion in concluding that the record of Pam's prior convictions would be relevant to his credibility. The forgery conviction is per se admissible under ER 609(a)(2) and, although the issue is close, the trial court did not abuse its discretion in admitting the narcotics offense under ER 609(a)(1). I disagree, however, with the majority's conclusion that the trial court properly weighed the prejudicial effect of the robbery conviction against its probative value. *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981); *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980).

The rule to be followed here was explicated in *State v. Moore,* 29 Wn. App. 354, 364–65, 628 P.2d 522 (1981):

> Robbery is not a crime involving "dishonesty or false statements," *United States v. Smith,* [551 F.2d 348, 39 A.L.R. Fed. 539 (D.C. Cir. 1976)]. The trial court was required to rule on admissibility exercising its "discretion as circumscribed by ER 609." *State v. Alexis, supra* at 16. We hold that the trial court erred by not considering all relevant factors under the rule.
>
> We first note that the mere conclusion by the trial court that the probative value of the evidence outweighs

the prejudice to the defendant is not enough to demonstrate a proper exercise of discretion. The same unsupported conclusion was reached by the trial court that was reversed in *Alexis.*

It seems to us, a major factor to be considered in the balancing procedure is a comparison of the importance that the jury hear the defendant's account of events with the importance that it know of his prior conviction. In this case for example, unless the defendant testifies it is highly unlikely that his version of the matter will get before the jury. Thus, while we believe it important that Alexis testify, we also believe it equally important that the jury be fully able to evaluate his credibility as a witness.

Some other factors that may be considered in weighing probative value of credibility against potential prejudice include: (1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime. In each case, the balancing procedure should be followed. There is no place for a per se rule.

(Citations omitted.) *Alexis,* at 19. The *Alexis* court also held that a cautionary instruction is not always sufficient to overcome the tendency of the evidence to unduly influence the jury.

The inquiry is whether, upon balancing all the relevant factors, evidence of Pam's prior robbery conviction should have been excluded under ER 609(a)(1). The State bears the burden of proof that the probative worth of the prior conviction offered to impeach a witness exceeds the prejudicial impact receipt of the evidence might have on the trier of fact. *See United States v. Stewart,* 581 F.2d 973 (D.C. Cir. 1978); *United States v. Smith,* 551 F.2d 348, 39 A.L.R. Fed. 539 (D.C. Cir. 1976).

The trial court nowhere indicates in considering the motion to suppress the use of the conviction that it considered either the prejudicial effect of the similarity between the past crime and the charged crime or the availability of other means of impeachment. The trial court overlooked

the serious danger that a prior identical offense would be improperly used to convince the jury that because Pam did it once before, he probably did it again. In their scholarly treatise, Professors Louisell and Mueller observe:

When the accused is a witness, the closer the resemblance between the crime charged against him and the crime previously resulting in the conviction which is now sought to be introduced to impeach, the greater the potential of prejudicial effect to the defendant. The prejudice, of course, lies in the risk that the jury will misuse the prior conviction to infer either that defendant is guilty of the charged crime, or that he is a bad person worthy of punishment.

3 D. Louisell & C. Mueller, *Federal Evidence* § 316, at 329 (1979). It was totally unnecessary to create such prejudice here because impeachment with the forgery and narcotics convictions would have sufficiently served the purpose of the State to the extent necessary to challenge the credibility of the defendant were he to take the stand.

In *State v. Thompson, supra,* the Supreme Court elaborated on the application of ER 609(a) and noted the importance of the availability of dissimilar convictions when the trial court is ruling on the use of similar convictions for impeachment. The holding of *Thompson* is that the foremost factors for the trial court to balance are (1) the importance that the jury hear the defendant's testimony and (2) the importance that it know of his prior conviction. Here, it was of little importance in challenging Pam's credibility that the jury know of the prior robbery because two other convictions were available to impeach the defendant's credibility. Pam's testimony, on the other hand, was highly important because without it he had no means of presenting a defense other than by challenging the State's identification witnesses and photo montage procedures. The trial court was aware that its decision to admit the robbery conviction was the primary reason Pam chose not to testify.

The court's statement in *Alexis* at page 20, is also apropos:

It seems to us the availability of other evidence to test Alexis' credibility should he testify, taken together with the potential for great prejudice created by the admission of his prior rape conviction, would outweigh the probative value the conviction would have as to his credibility in this case as a witness.

I would hold that the trial court abused its discretion because of its failure to weigh the similarity of the conviction to the charged crime, the availability of the other evidence of prior convictions, and the importance of Pam's testimony against the probative value to the State's case of the prior robbery conviction.

The deprivation of liberty resulting from a criminal conviction should not be sustained where it is based upon forcing the accused to choose between abandoning a defense or risking the prejudice caused by an unnecessary use of a prior similar offense to impeach that defense. I would reverse the judgment and remand for a new trial.

Reconsideration denied December 7, 1981.

Review granted by Supreme Court March 3, 1982.

