[No. 11409-3-I. Division One. December 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMIE D. GOFORTH, *Appellant.*

*David Wohl* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Weppner, Deputy,* for respondent.

SWANSON, J.—On April 2, 1979, Jimmie D. Goforth was convicted of first degree robbery while armed with a deadly weapon. Goforth moved for a new trial on the basis of newly discovered evidence; the motion was denied. On appeal, Goforth claims the denial of a new trial was an abuse of discretion and there was no factual basis for the

deadly weapon finding.

A robbery occurred at Yazzolino's Restaurant at about 10 p.m. on November 11, 1978. Ms. Lock, a restaurant employee, provided the police with a description of the robber. She said the robber fled in what appeared to be a Mustang automobile. From a photo montage, she indicated Goforth was the robber.

Mr. Wells was also working at the restaurant the night of the robbery. He provided the police with a description of the robber and getaway car that was virtually identical to that provided by Ms. Lock. When presented with a photo montage, Wells also identified Goforth as the robber.

While Sidney Cook was driving his car near Yazzolino's Restaurant just after the robbery, he almost collided with a light colored Mustang automobile missing a front headlight. He reported the incident to the police.

Cheryl Nelson testified that she spent the entire evening of the robbery with Goforth.

Approximately 3 weeks after the robbery, Goforth was arrested near Yazzolino's Restaurant. He was a passenger in a light colored Mustang automobile. The automobile was missing a front headlight. A jury convicted Goforth of first degree robbery and returned a deadly weapon finding.

Goforth met John LaBeur while both were confined in the King County Jail. They were in the same tank and shared a dayroom for more than 4 months after Goforth was convicted. LaBeur subsequently admitted to committing the robbery for which Goforth was convicted. The trial judge heard LaBeur's admission testimony during a motion by Goforth for a new trial; nevertheless the trial judge denied the motion.

Goforth claims the trial court abused its discretion when it denied his motion for a new trial based on newly discovered evidence. We disagree.

■ The test for evaluating a motion for a new trial based upon newly discovered evidence, CrR 7.6(a)(3), is whether the evidence (1) will probably change the result if a new trial is granted, (2) has been discovered since trial,

(3) could not have been discovered before trial by the exercise of due diligence, (4) is material to the issues and admissible, and (5) is not merely cumulative or impeaching. *State v. Gibson,* 75 Wn.2d 174, 449 P.2d 692 (1969), *cert. denied,* 396 U.S. 1019, 24 L. Ed. 2d 511, 90 S. Ct. 587 (1970); *State v. Letellier,* 16 Wn. App. 695, 558 P.2d 838 (1977). A trial court's denial of a motion for a new trial will not be overturned absent a manifest abuse of discretion, *State v. Franks,* 74 Wn.2d 413, 445 P.2d 200 (1968).

In the case at bar, the focus on appeal concerns the first element, that is, whether the newly discovered evidence will probably change the result if a new trial is granted. Goforth presented evidence, including the following, at his motion for a new trial:

1. John LaBeur's testimony that he committed the robbery for which Goforth was convicted. LeBeur testified with particularity about the robbery, including what he wore, what kind of gun he used, and in what type of car he fled. On cross examination, LaBeur admitted to having been previously convicted of robbery.

2. Mark VonMoos testified that about 6 weeks after the robbery at Yazzolino's Restaurant, LaBeur telephoned him to inquire about marijuana transactions. VonMoos and LaBeur met and VonMoos suggested stopping to eat:

> And then we started pulling out of a gas station, and we saw this restaurant. And I thought this restaurant and pizza, let's stop and eat. "No I can't. I don't want them to see me." And I thought what? He goes, "I just did that place." really firm; you know?

VonMoos described the restaurant as being in a plaza on Kent–Kangley Road. Two gas stations are in the vicinity of Yazzolino's Restaurant.

Goforth argues that the trial court abused its discretion by weighing the strength of LaBeur's and VonMoos' testimony against the strength of the evidence presented at trial, *State v. Ramel,* 65 Wn.2d 326, 396 P.2d 988 (1964), to arrive at its determination whether a new trial would probably change the result of the first trial.

In passing upon the question whether newly discovered evidence will probably result in a different outcome upon retrial, the trial court must of necessity pass upon the credibility, significance, and cogency of the proffered evidence. *See State v. Peele,* 67 Wn.2d 724, 409 P.2d 663 (1966); *State v. Thorp,* 133 Wash. 61, 65, 233 P. 297 (1925). *Accord, United States v. Steel,* 458 F.2d 1164 (10th Cir. 1972); *United States v. Miller,* 277 F. Supp. 200, 209 (D. Conn. 1967), *rev'd on other grounds,* 411 F.2d 825 (2d Cir. 1969).[1] The trial court may utilize the knowledge that it gained from presiding at the trial, *e.g., United States v. Curry,* 497 F.2d 99 (5th Cir.), *cert. denied,* 419 U.S. 1035, 42 L. Ed. 2d 311, 95 S. Ct. 519 (1974), and may take into account the criminal records of the persons whose affidavits are submitted at the hearing. *Brandon v. United States,* 190 F.2d 175, 178 (9th Cir. 1951). In the case at bar the trial court did not abuse its discretion, that is, discretion "exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

After in-court testimony by LaBeur, the trial court observed that LaBeur and Goforth did not look alike; witnesses to the robbery picked Goforth's photograph from a montage and also at trial positively identified Goforth as the robber; LaBeur was not credible; and VonMoos' testimony about robbing "that place" in late 1978 was too unspecific to be corroborative. The trial court stated that it was weighing the evidence and following the dictates of *State v. Barry,* 25 Wn. App. 751, 611 P.2d 1262 (1980).

The record indicates the trial court considered the proper

---

[1] *State v. Ramel,* 65 Wn.2d 326, 396 P.2d 988 (1964), relied upon by the defendant, is not at odds with this rule. In *Ramel* the trial court granted a retrial, noting both that newly discovered evidence would establish an alibi for the defendant if believed by the jury and that there would not have been a conviction had the evidence been available to the jury. The holding of *Ramel* that these grounds provided sufficient justification for the trial court's grant of a new trial is consistent with the rule that the trial court must necessarily assess the sufficiency of the new evidence to determine whether a new trial would probably result in a different outcome.

factors in reaching its decision. The credibility of the key witness, inmate LaBeur, could properly be discounted because of the inmate's jail–time acquaintance with Goforth. *See United States v. Schoepflin,* 442 F.2d 407 (9th Cir. 1971). The strength of Goforth's newly discovered evidence is not such that this court can say the trial court abused its discretion.

Goforth claims for the first time on appeal there was insufficient evidence in the record for the trial court to enter a judgment that Goforth was armed with a deadly weapon pursuant to RCW 9.95.040. We are not obliged to consider an issue on appeal unless it is either raised below or is of sufficient constitutional stature. The deadly weapon issue raised on appeal was not properly raised below and is not of constitutional stature; however, to avoid additional review efforts and in the interest of judicial economy, we will consider it.

Goforth's claim is that the jury did not have sufficient evidence before it to conclude beyond a reasonable doubt that he was armed with a deadly weapon *"in fact." State v. Tongate,* 93 Wn.2d 751, 755, 613 P.2d 121 (1980).

We have before us in the record the following testimony about the robber's gun:

Witness Locke:
Q. Would you please describe the gun?
A. Okay. It was a sawed–off—it looked like a sawed–off shotgun to me and it had a little bolt–like thing, like that, you know.
Q. What was sawed off, the barrel or the stock?
A. The barrel, the barrel.
Q. Do you know anything about shotguns yourself?
A. I have seen a lot of them.
Q. Did it look real to you?
A. Yes, sir.
. . .
Q. How close did you get to the gun?
A. I was looking right at the barrel. . . . [H]e just barely touched me with it, but that's when I looked up and I could see that it was a real gun. It looked pretty—I am—yeah, it was a real gun.

. . .

Q. Okay. You also indicated that you had some experience or at least knew something about shotguns?

A. Yes, sir.

Q. And where did you gain that knowledge?

A. My fiance had a couple shotguns and I have seen them in stores, looking at them in catalogues. I like the stocks and stuff. I like to look at the wood on them.

. . .

Witness Wells:

Q. You described a gun, sir. What sort of a weapon did you see?

A. It looked like a sawed–off shotgun.

. . .

Q. Do you have any familiarity with firearms?

A. Yeah. I took a gun safety course in Boy Scouts.

Q. Do you have any familiarity with shotguns specifically?

A. Yeah.

Q. Have you ever operated one?

A. Yes.

The relevant question presented is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'*" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980), quoting *Jackson v. Virginia,* 443 U.S. 307, 318, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) (italics in *Green*). In *State v. Newman,* 4 Wn. App. 588, 595, 484 P.2d 473 (1971), both eyewitnesses testified that one of the robbers was armed with a .22 caliber pistol. No shots were fired. The appellant in that case acknowledged that evidence but contended, as Goforth does on appeal, that neither witness could state whether the gun was capable of being fired. The court held, according to *Tongate,* that "[t]he evidence is sufficient if a witness to the crime has testified to the presence of such a weapon . . ." *Tongate,* at 754. "The evidence may be circumstantial; no weapon need be produced or introduced. [*State v.*] *Slaughter,* [70 Wn.2d 935, 938–39, 425 P.2d 876 (1967)]; *State v. Williams,* 3 Wn. App. 336,

339, 475 P.2d 131 (1970)." *Tongate,* at 754.

Another case addressing approximately the same issue as in the present case is *State v. Pam,* 30 Wn. App. 471, 635 P.2d 766 (1981); *review granted,* 97 Wn.2d 1002 (1982). In *Pam* no shots were fired; however, the weapon fell apart and the police recovered the forestock of "what *appeared* to be a shotgun." (Italics ours.) *Pam,* at 472. The court reasoned (1) witnesses testified that the defendant had a shotgun, (2) what *appeared* to be a forestock of a shotgun was recovered, and (3) no controverting evidence was offered that might support an inference that the defendant carried only a gun–like object; therefore, there was no evidence which would support a reasonable doubt as to whether the defendant was armed with a real gun.

In the case at bar, two witnesses to the crime testified to the presence of a gun. It is not necessary that the gun be discharged during the crime or subsequently recovered. Testimony from witnesses alone may provide sufficient evidence from which a jury may conclude beyond a reasonable doubt that the gun was operable in fact. *Newman; Tongate; see Pam.* We conclude the jury had before it sufficient evidence to find Goforth was armed with a deadly weapon when committing the robbery.

The judgment is affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.

Remanded to the Court of Appeals March 29, 1983.