[No. 15565-2-I.   Division One.   August 25, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN DAVID THAMERT, *Appellant.*

*Anna Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marion J. Mittet, Deputy,* for respondent.

Pekelis, J.—John David Thamert appeals his conviction for two counts of second degree robbery. He alleges that the trial court erred when it failed to allow a jail nurse and a psychiatrist to testify regarding his diminished capacity defense and when it admitted evidence of prior robbery

convictions without the requisite balancing under ER 404(b). We affirm the trial court.

On June 13, 1984, a new accounts clerk at the Burien branch of Seattle Trust Bank noticed Thamert sitting on the sidewalk in front of the bank, apparently waiting for it to open. She testified that Thamert looked "kind of half—like sleepy," "kind of messy and tired looking", and "like he was not very with it at that moment," but he did not appear to be drugged or drunk as he milled around the lobby.

Maria, a teller, testified that when Thamert entered the bank he had a coat over his arm which completely covered his hand. Thamert waited behind the customer whom Maria was serving, although tellers were available on each side of her. One of the other tellers asked if she could help Thamert, but he responded he would wait where he was. When Thamert stepped up to Maria's window, he said in a low voice, "'I'm armed and I want a thousand dollars.'" When Maria asked whether he had something to put the money in, he responded that he would put it in his pockets. After she gave Thamert the money, he said, "'I know you have my picture. You may call the police when I leave.'" Maria told the police later that Thamert appeared to be drugged.

On June 25, 1984, Krista, a teller for Seattle–First National Bank, noticed a customer had gotten out of line and was waiting for her. Again, tellers were free on each side of her. The man, later identified as Thamert, was carrying a coat over his arm. He stepped up to her cage and told her in a low voice that he was armed and dangerous and that he wanted $1,000. As Krista took the money from her cash drawer, she tripped the silent alarm. After receiving the money, Thamert said that he wanted 10 minutes to get away.

The police arrived and arrested Thamert at a nearby donut shop and advised him of his *Miranda* rights. At the precinct, the police found $1,000 on Thamert. After the police readvised Thamert of his rights, he gave a statement

which began: "My name is John D. Thamert, and I have been arrested for Bank Robbery in the past. I served 3 years in the penitentiary for that crime, and was released from the Bishop Lewis House about 3 weeks ago." He also confessed to the crimes with which he is charged here, explaining that voices told him to rob the banks. His confession was admitted into evidence over defense objection.

At trial, Dr. John Petrich, a psychiatrist, testified for the defense that Thamert was suffering from chronic paranoid schizophrenia, an incurable disorder characterized by identity confusion, the hearing of voices, indecisive thinking, and poor impulse control. He also stated that he was unsure whether Thamert was taking the medication Prolixin at the time of the robberies. Prolixin tends to suppress the hallucinations and disorganization suffered by schizophrenics. Dr. Petrich testified that in his opinion Thamert was unable to form the intent to steal at the time in question.

Following Dr. Petrich's testimony, the court granted the State's motion to exclude the testimony of Dr. Coleman, the jail psychiatrist who conducted a mental status examination on June 25, 1984, following Thamert's arrest and who had subsequently prescribed medication for him. The court previously had also granted the State's motion in limine to exclude the testimony of the jail nurse who administered anti–psychotic medication to Thamert.

Thamert was convicted of two counts of second degree robbery. He first contends that the trial court erred when it excluded testimony of the jail psychiatrist.

■ Whenever "intent," as defined in RCW 9A.08-.010(1)(a), is an element of a crime, it may be challenged by competent evidence of a mental disorder resulting in the inability to form the requisite intent when the crime was committed. *State v. Edmon,* 28 Wn. App. 98, 104–06, 621 P.2d 1310 (1981). Since intent is a necessary element of robbery, this "diminished capacity" defense is available in a robbery prosecution. *State v. Faucett,* 22 Wn. App. 869, 593 P.2d 559 (1979); *State v. Carter,* 5 Wn. App. 802, 490

P.2d 1346 (1971).

When diminished capacity is raised, an expert may give an opinion regarding the defendant's ability to form a specific intent when the following foundational requirements are met:

1. The defendant lacked the ability to form a specific intent due to a mental disorder not amounting to insanity.

2. The expert is qualified to testify on the subject.

3. The expert personally examines and diagnoses the defendant and is able to testify to an opinion with reasonable medical certainty.

4. The expert's testimony is based on substantial supporting evidence in the record relating to the defendant and the case, or there must be an offer to prove such evidence. The supporting evidence must accurately reflect the record and cannot consist solely of uncertain estimates or speculation.

5. The cause of the inability to form a specific intent must be a mental disorder, not emotions like jealousy, fear, anger, and hatred.

6. The mental disorder must be causally connected to a lack of specific intent, not just reduced perception, overreaction or other irrelevant mental states.

7. The inability to form a specific intent must occur at a time relevant to the offense.

8. The mental disorder must substantially reduce the probability that the defendant formed the alleged intent.

9. The lack of specific intent may not be inferred from evidence of the mental disorder, and it is insufficient to only give conclusory testimony that a mental disorder caused an inability to form specific intent. The opinion must contain an explanation of how the mental disorder had this effect.

(Citations omitted.) *Edmon,* at 102–03.

Thamert's offer of proof regarding Dr. Coleman's testimony failed to comply with the first, sixth and ninth prongs of the *Edmon* test. There was no representation given that the jail psychiatrist had made any determination of Thamert's capacity to form the intent to rob. Dr. Coleman's testimony, as offered, would have merely described Thamert's general mental state on June 25, which is neither

relevant nor material to the question of his ability to form the specific intent to rob. *See also Carter,* at 807. The offer of proof also failed to establish that the psychiatrist was competent to testify with any degree of certainty that Thamert was on drugs when he was arrested. Dr. Coleman would have testified only that he gave Thamert drugs after he was arrested, a fact which was immaterial and irrelevant to the issues of whether Thamert lacked the ability to form the specific intent to commit robbery, and, if so, whether this inability was the result of a mental disorder.

Finally, in light of the fact that Dr. Petrich had already testified with medical certainty that he believed Thamert could not form the intent to commit robbery, the court correctly determined that the testimony of the jail psychiatrist would be not only legally insufficient, but cumulative. *See State v. Mathews,* 38 Wn. App. 180, 185–86, 685 P.2d 605 (1984). Thus, the court properly excluded the testimony on this basis.

Thamert also contends that the court erred when it excluded testimony from the jail nurse, a lay witness.[1] Lay witnesses may testify concerning the sanity or mental responsibilities of others so long as the witness' opinion is based on facts the witness personally observed. *State v. Stoudamire,* 30 Wn. App. 41, 47, 631 P.2d 1028 (1981); *State v. Crenshaw,* 27 Wn. App. 326, 332–33, 617 P.2d 1041 (1980), *aff'd,* 98 Wn.2d 789, 659 P.2d 488 (1983). The court has discretion in deciding whether to allow a nonexpert witness to testify concerning the defendant's mental state. *State v. Stoudamire, supra.* The court's decision will be upheld if it is not manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Stoudamire,* at 47.

Here, the court did not abuse its discretion. The offer of

---

[1] In his brief, Thamert appears to concede that under these circumstances the nurse is not an expert witness, although he argues that because she is a "medical professional," her testimony would be highly relevant. He cites no authority for the creation of a third category of witnesses.

proof indicated that the nurse would merely testify to Thamert's general mental state. She lacked the expertise to address the central issue before the court, *i.e.,* whether Thamert's diminished capacity resulted in an inability to form the specific intent to commit these robberies. Further she could not even testify from personal knowledge whether he was on drugs when he committed the robbery. Therefore, the court properly excluded the nurse's testimony.

Thamert next contends that the trial court erred when, without considering his objection under ER 404(b), it admitted into evidence that portion of Thamert's confession in which he mentioned his prior bank robbery without considering his objection under ER 404(b).[2] We agree that the evidence of the prior robbery raises an issue under ER 404(b), which provides:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to admit evidence under ER 404(b), the trial court must analyze the rule in conjunction with ER 401 and ER 403. *State v. Saltarelli,* 98 Wn.2d 358, 362–63, 655 P.2d 697 (1982). First, the court must determine whether under ER 401 the evidence is logically relevant and necessary to prove an essential ingredient of the crime charged, rather than for the purpose prohibited under the first sentence of ER 404(b). Then the court must determine on the record whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice pursuant to ER 403. *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961

---

[2]The State contends that Thamert has not preserved this issue because he failed to raise ER 404(b) at trial. After careful review of the record, we find that it was clear Thamert's objection was based on ER 404(b), the rule invoked by the State to support the admission of the evidence of prior bad acts.

(1981).[3] Finally, if the evidence is admitted, the court must properly limit the purpose for which it may be considered by the jury. *State v. Gatalski,* 40 Wn. App. 601, 607–08, 699 P.2d 804 (1985).

Defense counsel objected to the admission of that portion of Thamert's confession referring to the fact that he had robbed a bank before and apparently been convicted for that crime. Initially, the trial court did note on the record the relevance of Thamert's prior crimes to the disputed issue of intent, a proper purpose under ER 404(b). However, the court failed to balance that relevance with the potential prejudicial effect of admitting this evidence. Instead, the court abandoned its analysis because it erroneously concluded that the admissibility of this testimony on an evidentiary basis had already been determined at the CrR 3.5 hearing.

The issue at the CrR 3.5 hearing, however, was constitutional, not evidentiary. U.S. Const. amends. 5, 14. Pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the only determination which the court makes at the CrR 3.5 hearing is whether the confession meets the constitutional prerequisite to admissibility. In this case, the court found that Thamert made a knowing, voluntary and intelligent waiver of his right to remain silent. *State v. Robtoy,* 98 Wn.2d 30, 36, 653 P.2d 284 (1982). Since this inquiry did not address the contents of the statement, but rather addressed the circumstances under which the statement was made, it did not foreclose further analysis under the Rules of Evidence. The admissibility of Thamert's confession, albeit voluntary, depends on its relevance, potential prejudice, and possible

---

[3]We do not agree with *State v. Anderson,* 41 Wn. App. 85, 101 n.5, 702 P.2d 481 (1985) that *State v. Jackson,* 102 Wn.2d 689, 692–93, 689 P.2d 76 (1984), which merely emphasized the importance of conducting this balancing on the record as required in *Tharp,* pronounces a new procedural rule and must be applied prospectively only.

other evidentiary considerations.[4]

Had the court properly analyzed the proffered testimony under ER 404(b), it might have concluded that the probative value of the prior bad act was not outweighed by the danger of unfair prejudice. However, because the court failed to exercise its discretion in balancing on the record, the evidence was not properly admitted. *Tharp,* at 597.

■■ Nevertheless, the error was harmless. Since errors under ER 404 are not of constitutional magnitude, our inquiry is limited to whether, within reasonable probabilities, the outcome of the trial would have been different had the error not occurred. *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984). To determine the probable outcome, we focus on the evidence that remains after excluding the tainted evidence. *Tharp,* at 599.

The testimony from both bank tellers indicated that Thamert was carrying out an intentional plan, was apparently in control of what he was doing, and, indeed, indicated that he committed the crime twice in a virtually identical manner. He came up to specific tellers, said that he was armed, and demanded money. He was able to respond to specific questions and was aware that his picture was being taken. He was also aware of the need to have a certain amount of time to escape before the police were called.

Moreover, Dr. Petrich testified that Thamert was in control of himself at times, was somewhat aware that he was committing a crime and of the legal consequences of his actions. Although he nevertheless testified within a reasonable degree of medical certainty that Thamert was unable to form the intent to steal on June 13 and June 25, the jury need not have adopted his conclusion. *State v. Mulder,* 29 Wn. App. 513, 516, 629 P.2d 462 (1981); *State v. Lewis,* 19

---

[4]It would similarly be erroneous to assume that analysis under ER 404(b) is unnecessary because Thamert's confession is a statement of a party opponent under ER 801(d)(2). This rule merely takes the out–of–court statement outside the hearsay rule; it does not preclude its potential exclusion under ER 401, 403, or 404(b).

Wn. App. 35, 43, 573 P.2d 1347 (1978). Finally, since the defense motion to sever the two robbery charges was denied,[5] the jury was already aware that Thamert had robbed a bank more than once. The prejudice in admitting evidence of any additional robbery was minimal.

After examining the untainted evidence, we conclude that the jury would more probably than not have returned a guilty verdict even if the evidence of other crimes had not been admitted.

Affirmed.

SCHOLFIELD, C.J., and WEBSTER, J., concur.

Review denied by Supreme Court December 2, 1986.

---

[5]Thamert has not assigned error to the denial of his motion to sever.