[No. 29512-1-II. Division Two. September 21, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. LOUIS ROGER ACOSTA, JR., *Appellant*.

---

*Thomas E. Weaver, Jr.*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

VAN DEREN, J. — Louis Roger Acosta, Jr., appeals his convictions for first degree robbery, second degree theft, taking a motor vehicle without permission (TMVOP), and methamphetamine possession. Acosta's defense was diminished capacity. He asserts that the trial court erred by (1) admitting arrest and conviction evidence, (2) suppressing sexual abuse evidence, (3) miscalculating his offender score, and (4) not finding that some of the current convictions constitute the same criminal conduct. Acosta also contends that the evidence was insufficient for the possession conviction, that he was subjected to double jeopardy, and that he received ineffective assistance of counsel. We affirm the trial court's rulings on admissibility of sexual abuse evidence, hold that there was no double jeopardy or same criminal conduct error, and conclude that he had effective assistance of counsel. But we reverse and remand based on the erroneous admission of arrest and conviction evidence and incorrect offender score calculation.

## FACTS

This appeal stems from events that occurred on November 7, 2001, at the home of Acosta's sister, Wendy McClearie (Wendy). That morning Acosta called Wendy and told her that they "kicked [him] out" of detox and he wanted to come to her home to see her and do his laundry. Report of Proceedings (RP) at 92. Acosta stayed at Wendy's home while she went to work for the morning.

That afternoon, the two smoked marijuana and ate pizza. At trial, Wendy related the following events: (1) Acosta left the room while Wendy watched television. Wendy then smelled something burning, entered the kitchen, and found papers burning on the stove. As she attempted to put out the fire, Acosta wrapped a black nylon around her head; (2) a struggle ensued and Acosta alternately beat and sexually assaulted her as they moved toward the front door. Acosta gave Wendy choices as to how she wanted to die: by knife, gun, hammer or she could let him take her to "West Park

where [he would] have some black guys fuck [her] in the ass"; (3) as Acosta continued to sexually assault Wendy, she broke free and ran out the front door. RP at 121. Acosta tackled her on the front lawn and resumed his assault until her screams caused him to let her go. At some point Wendy's car keys came out of her pocket and Acosta retrieved them.

Wendy ran to a neighbor's home and called 911. The neighbors observed Acosta leave in Wendy's car. After the police arrived, Wendy noticed her purse was missing. It contained two checks totaling $600.

Police arrested Acosta four days later as he was walking near the stolen vehicle. They handcuffed him and placed him in a police vehicle. Deputy Logdahl noticed a small baggie on the ground near the police vehicle, which he later confirmed contained methamphetamine. The police recovered the two missing checks from Wendy's purse in the stolen car.

The State charged Acosta with six counts: second degree assault, second degree attempted rape, first degree robbery, second degree theft, TMVOP, and possession of a controlled substance (PCS).

Acosta asserted the defense of diminished capacity. He claimed that his actions were a "psychotic episode" triggered by two events: first, Wendy had sexually abused him as a child, and second, just before Acosta assaulted Wendy they had been arguing about James McClearie's[1] (James) sexual abuse of Acosta's niece. RP at 4.

At trial, the court allowed Acosta to present evidence of diminished capacity, including the testimony of Dr. George Harris, a physician and psychiatrist. The State responded by calling Dr. Roman Gleyzer, a psychiatrist who, over defense objections, testified that Acosta had the following criminal history:

---

[1] James McClearie is Wendy McClearie's husband.

| Arrests | Year | State | Result |
|---|---|---|---|
| Possession of stolen property | 1990 | CA | Arrest |
| Concealed weapon | 1990 | CA | Misdemeanor Conviction |
| Possession of burglary tools | 1990 | CA | Arrest |
| DUI | 1991 | CA | Arrest |
| Carrying a concealed weapon in vehicle | 1991 | CA | Arrest |
| Obstructing/resisting a public officer | 1991 | CA | Arrest |
| Burglary | 1991 | CA | Arrest |
| Impersonation to make other liable | 1991 | CA | Misdemeanor Conviction |
| Possession of burglary tools | 1991 | CA | Misdemeanor Conviction |
| Burglary | 1991 | CA | Arrest |
| Possession of a controlled substance & hypodermic needle | 1993 | CA | Arrest |
| PCS | 1992 | CA | Felony Conviction |
| PCS or stolen property | 1994 | CA | Felony Conviction |
| Petty theft | 1996 | CA | Felony Conviction |
| Burglary | 1996 | CA | Arrest |
| Parole violation | 1998 | CA | Felony Conviction |
| Possession of burglary tools | 1998 | CA | Misdemeanor Conviction |
| Burglary | 1999 | CA | Felony Conviction |
| Parole violation | 1999 | CA | Arrest |
| Violation of Uniformed Controlled Substance Act (VUCSA) | 2000 | WA | Felony Conviction |
| PCS | 2000 | WA | Arrest |
| PCS | 2000 | WA | Arrest |
| PCS | 2000 | WA | Arrest |

The court suppressed all testimony regarding James' alleged sexual abuse of the niece, ruling that the evidence was "substantially designed to appeal to the passion and prejudice of the jurors," and allowed only limited testimony about Wendy's sexual abuse of Acosta, reasoning that the evidence was admissible only to the extent that it played a role in the doctors' diminished capacity diagnosis. RP at 832.

The jury convicted Acosta on four counts: first degree robbery, second degree theft, TMVOP, and PCS. It could not

reach a verdict on the assault and attempted rape charges. The jury also determined that the robbery, theft, and TMVOP charges were committed against a family or household member.

The trial court sentenced Acosta to 144 months in prison using an offender score of eight. This offender score included three points for three out of state convictions. He then timely filed this appeal.

The issues on appeal include whether the trial court properly (1) admitted and excluded evidence of arrests, convictions, and sexual abuse testimony; (2) calculated his offender score; (3) refused to apply a same criminal conduct analysis for sentencing; and whether (4) the evidence was sufficient to convict him of possession of a controlled substance; (5) his theft and robbery convictions subjected him to double jeopardy; and (6) he received effective assistance of counsel.

### EVIDENCE OF DIMINISHED CAPACITY

■ ■ Evidence offered to prove diminished capacity is subject to the usual rules of evidence, including those on relevance, expert witnesses, and unfair prejudice. *State v. Atsbeha*, 142 Wn.2d 904, 917, 16 P.3d 626 (2001); *State v. Ellis*, 136 Wn.2d 498, 522-23, 963 P.2d 843 (1998); *State v. Guilliot*, 106 Wn. App. 355, 360-61, 22 P.3d 1266 (2001); ER 101. We review the trial court's rulings for an abuse of discretion. *Atsbeha*, 142 Wn.2d at 913-14.

*State v. Odell*, 38 Wn.2d 4, 227 P.2d 710 (1951), an insanity case that the trial court relied on, neither adds nor detracts from these concepts. It merely holds that evidence of insanity, like evidence of diminished capacity, must be relevant and otherwise admissible under the rules. Moreover, the analysis in *State v. Thamert*, 45 Wn. App. 143, 147, 723 P.2d 1204 (1986), another case that the trial court relied on, has been superseded by the analysis in *Ellis* and *Atsbeha*. *Atsbeha*, 142 Wn.2d at 913-14; *Ellis*, 136 Wn.2d at 504.

Acosta assails three of the trial court's rulings on evidence offered to prove diminished capacity: (1) the State offered and the trial court admitted a "laundry list" of Acosta's prior arrests and convictions; (2) the State offered and the trial court excluded evidence that James had abused Acosta's niece; and (3) Acosta offered and the trial court restricted evidence that Wendy had abused Acosta when he was a child. Br. of Appellant at 21. We analyze each ruling separately.

## A. PRIOR ARRESTS AND CONVICTIONS

Acosta challenges the trial court's admission of testimony by the State's expert, Dr. Gleyzer, which included a "laundry list" of Acosta's prior arrests and convictions. Br. of Appellant at 21. He asserts that Dr. Gleyzer's recitation of his arrest and conviction history was irrelevant, unreliable and inadmissible to show Acosta's state of mind during the alleged crimes. ER 401, 403, 404(b).

Dr. Gleyzer read a NCIC[2] list of Acosta's California arrests and convictions from 1990 to 1999 to the jury, first reading all the arrests and convictions together, then re-reading the convictions. Dr. Gleyzer did not verify the accuracy of the NCIC report, know whether all of the arrests were drug related, or "the details" of the charges. RP at 1057. He characterized each of the convictions as either felonies or misdemeanors. But the sentencing memoranda and the judgment and sentence indicate that the NCIC designations were disputed and most of the California crimes designated as felonies were not comparable crimes under Washington law.

He further testified that Acosta was convicted in Washington of a VUCSA in 2000, and had three drug arrests in September and October, 2000.

---

[2] NCIC is the National Criminal Information Center.

■ The issues here are whether these arrests and convictions were (1) logically relevant and (2) not too unfairly prejudicial. Evidence is relevant if it has "any tendency" to prove or disprove a fact or consequence to the action. ER 401. Even if relevant, evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

A trial court must balance the probative and prejudicial value of the evidence on the record. *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995). When ER 404(b) is implicated, the trial court must identify on the record the purpose for which other crimes or misconduct are admitted. *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997). A trial court's failure to articulate its balancing process may be harmless if the record as a whole permits appellate review. *State v. Stanton*, 68 Wn. App. 855, 864, 845 P.2d 1365 (1993); *State v. Bowen*, 48 Wn. App. 187, 191, 738 P.2d 316 (1987).

The State had three possible purposes when it offered Acosta's prior arrests and convictions. One purpose may have been to show his bad character or criminal propensities. A second might have been to show his state of mind on the dates of his current offenses, November 7 and 11, 2001. And a third purpose might have been to support the opinion rendered by Dr. Gleyzer. Because the analysis for each purpose is different, we address each separately.

1. Character or Propensity

■ The State might have been offering Acosta's criminal history to show his propensity to commit the charged crimes. Under ER 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." And none of the exceptions to this rule apply under these facts. ER 404(a). If the State offered Acosta's arrests and convictions for this purpose, the evidence was clearly inadmissible under ER 404(a).

## 2. State of Mind

■ The State might have been offering Acosta's criminal history to indicate his state of mind on November 7 and 11, 2001. ER 404(b) distinguishes between evidence offered to establish conformity with prior bad behavior, and evidence offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). These "other purposes" tend to establish the defendant's state of mind at the time he or she committed the current offense. ER 404(b).

Evidence that tends to prove a defendant's state of mind may be admissible if it satisfies the other rules of evidence. Specifically, the evidence must be relevant under ER 401, and its probative value must outweigh the danger of unfair prejudice. ER 403.

We first ask whether Dr. Gleyzer's testimony listing Acosta's prior arrests and convictions suggests his state of mind at the time of the current offenses. *See Commonwealth v. Boulden*, 179 Pa. Super. 328, 116 A.2d 867, 873 (1955) ("[t]he state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time"). We do not believe it does.

■■ The arrests are unproved allegations and we have no way to evaluate whether the underlying act, or the intent behind the act, ever occurred. *State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289 (1993) (citing *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981) (to be admissible under ER 404(b), a prior bad act must be proved by a preponderance of the evidence)); *State v. Morgan*, 146 Wash. 109, 110, 261 P. 777 (1927). The arrests are therefore not probative of Acosta's state of mind during the current offenses.

■ The admission of Acosta's convictions was also flawed. The record is silent regarding any required specific intent or state of mind for the prior convictions.

And no evidence supports a conclusion that his state of mind during the prior offenses demonstrates that he formed the required intent on November 7 and 11, 2001. Some of the convictions were over 10 years old, and all of them were over 2 years old. The State offered no logical theory to show how Acosta's prior acts are relevant to his intent to commit the current offenses. *State v. Wade*, 98 Wn. App. 328, 335, 989 P.2d 576 (1999).

■ Even if the testimony did show Acosta's intent to commit the current offenses, it does not satisfy the other rules of evidence. Relevant evidence must be both material and probative. *State v. Harris*, 97 Wn. App. 865, 868, 989 P.2d 553 (1999); ER 401. The challenged testimony encompasses neither of these elements.

Testimony regarding unproved charges and convictions at least 10 years old do not assist the jury in determining any consequential fact in this case.[3] ER 401. Instead, the testimony informed the jury of Acosta's criminal past and established that he had committed the same crimes for which he was currently on trial many times in the past. Dr. Gleyzer's listing of Acosta's arrests and convictions indicated his bad character, which is inadmissible to show conformity, and highly prejudicial. ER 404(a). And the relative probative value of this testimony is far outweighed by its potential for jury prejudice. ER 403.

### 3. Supporting Dr. Gleyzer's Opinion

The State may have been introducing Acosta's criminal history to establish a basis for Dr. Gleyzer's opinion that Acosta did not have diminished capacity, but instead suffered from antisocial personality disorder.

An expert can give an opinion if it is based on facts in evidence, or if the facts are reasonably relied on by other

---

[3] For the same reason, the felony convictions also would not be admissible under ER 803, because they do not prove any fact essential to sustain the judgment.

experts in the same field. ER 703. Dr. Gleyzer based his opinion on his examination of Acosta, and a review of Acosta's mental health treatment, family and criminal histories.

 An expert can testify regarding the basis for his opinion for the limited purpose of showing how he reached his conclusion only if the probative value of the basis for the opinion is not substantially outweighed by its prejudicial nature. *State v. Furman*, 122 Wn.2d 440, 452-53, 858 P.2d 1092 (1993); *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 399-400, 722 P.2d 787 (1986); *State v. Martinez*, 78 Wn. App. 870, 879-80, 899 P.2d 1302 (1995); ER 403; FED. R. EVID. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent . . . unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). Dr. Gleyzer based his opinion on Acosta's "pattern of relating to his family; his manipulative tendencies; history of conduct disorder as an adolescent . . . [and] his criminal behavior." RP at 1008.

The primary question is whether Dr. Gleyzer *reasonably* relied on Acosta's criminal history in making his diagnosis. We do not believe this reliance was reasonable.

 Dr. Gleyzer's reliance on Acosta's criminal record was unreasonable because he did not know the facts surrounding the arrests and convictions. Dr. Gleyzer testified that he did not verify the accuracy of the NCIC report, know whether all of the arrests were drug related, or "the details" of the charges. RP at 1057. He also mischaracterized the convictions, indicating that several offenses were felonies, which would not have been the case under Washington law.

Also, there is minimal evidence showing that Dr. Gleyzer needed to review Acosta's criminal record to determine whether or not his diminished capacity defense was valid. Instead, Dr. Gleyzer used the criminal history to bolster his opinion that Acosta suffered from antisocial personality disorder, a condition not considered by Acosta's expert or

raised as an issue by the defendant. Dr. Harris did not consider Acosta's criminal history in making his diagnosis.

Dr. Gleyzer testified that the purpose of looking at Acosta's life history was to "understand[ ] the veracity of information he provides in regard to diminished capacity" and "the nature of the behavior he presents at the time of the alleged offense."[4] RP at 947-48. But his testimony failed to tie his findings regarding diminished capacity to Acosta's criminal history or mental state in November 2001.

Furthermore, Dr. Gleyzer had sufficient facts on which to base his opinion without relying on the NCIC arrest and conviction list. Dr. Gleyzer interviewed Acosta, reviewed his mental treatment history and his family history. After omitting Acosta's criminal history, there were sufficient facts in evidence on which Dr. Gleyzer could establish his opinion. Instead it appears that Dr. Gleyzer used the arrest and conviction record to establish Acosta's bad character, which, as noted above, is improper. ER 404.

Even assuming Dr. Gleyzer could reasonably rely on Acosta's criminal history, the jury should not have heard this testimony. ER 403. When used solely to establish a basis for Dr. Gleyzer's opinion, the probative value of Acosta's criminal history is far outweighed by the danger of unfair prejudice. ER 403.

Thus, under any of the three potential purposes for introducing Acosta's criminal history, we find that its admission was improper. Acosta's criminal history was inadmissible character evidence, was not probative of whether Acosta was able to form the intent to commit the crimes on November 7 and 11, 2001, and was not reasonably relied on by Dr. Gleyzer in forming the basis for his opinion. And in

---

[4] Without further explanation he testified that he used this evidence primarily to support his conclusion that Acosta had antisocial personality disorder, but that it was also useful in his consideration of diminished capacity. On the contrary, Dr. Harris testified that Acosta's criminal history was not useful in establishing diminished capacity, but it could be helpful if trying to determine an antisocial behavior pattern. The disagreement between the experts about the proper use of the criminal history for diminished capacity evaluations is not addressed in the record.

any case, the potential prejudice of the criminal history evidence significantly outweighed any probative value.

"An evidentiary error which is not of constitutional magnitude, such as erroneous admission of ER 404(b) evidence, requires reversal only if the error, within reasonable probability, materially affected the outcome." *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997) (citing *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993)). We therefore assess whether the error was harmless by measuring the admissible evidence of guilt against the prejudice caused by the inadmissible testimony. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

The evidence of Acosta's guilt on the robbery, theft, TMVOP, and possession charges is as follows: (1) Wendy's neighbor saw Acosta drive away in the car; (2) the keys had fallen out of Wendy's pocket as they struggled; (3) Wendy did not give Acosta permission to take the car; (4) the police arrested Acosta as he was walking near the car four days later; (5) police found a small baggie containing methamphetamine on the ground near the police vehicle; (6) Acosta has a history of drug use; (7) the two missing checks were found in Wendy's car after Acosta's arrest; (8) Acosta testified that he did not remember much of that day or evening; and (9) Acosta had a history of some criminal convictions, extensive drug use, parole violations, and a troubled past.

Dr. Gleyzer's listing of Acosta's prior arrests and convictions was highly prejudicial in light of this testimony because the offenses were primarily for burglaries and drug related offenses, which are similar to or the same as the crimes the jury had to consider in Counts III, IV, and V. *State v. Hardy*, 133 Wn.2d 701, 711, 946 P.2d 1175 (1997); ER 403. Further, Dr. Gleyzer also recited the convictions twice from the NCIC, and misinformed the jury about whether they were felonies or misdemeanors.[5]

---

[5] Dr. Gleyzer erroneously characterized all the out of state convictions except the two drug convictions.

Acosta testified after Dr. Gleyzer, and stated only that he gave Dr. Gleyzer "an overall of what [he] had been incarcerated for." RP at 1185. Neither Acosta nor the defense expert, Dr. Harris, provided the jury any details about Acosta's criminal history.

We find the admission of the arrest and conviction evidence affected the outcome of the trial with reasonable probability, and it was therefore an abuse of the trial court's discretion to admit the "laundry list" of arrests and convictions, including the Washington arrests and convictions.

## B. SEXUAL ABUSE EVIDENCE

Acosta next challenges the court's suppression of evidence about James' sexual abuse of Acosta's niece and Wendy's sexual abuse of Acosta as a child. The trial court excluded any testimony as to the niece and limited the testimony on Acosta's abuse to what he related to both experts and what they relied on in forming their opinions.

### 1. Evidence of Sexual Abuse

The defense expert, Dr. Harris, testified minimally regarding the alleged sexual abuse. When asked during the offer of proof specifically how Acosta's "history" played a role in his decision, Dr. Harris responded that it was "not terribly helpful . . . except that you could anticipate that he would be more vulnerable to a psychotic illness with a traumatic childhood and adolescent history." RP at 741.

As a result of this testimony, the court ruled that Dr. Harris could not be questioned regarding James' abuse of Acosta's niece because this information "played no part in [Dr. Harris's] opinion whatsoever." RP at 752. The court limited Dr. Harris's testimony about Wendy's sexual abuse of Acosta to the fact that "it was reported to the doctor [and] . . . could have had some impact on his susceptibility to psychotic events as a result of ingesting drugs many years later." RP at 753. It also prohibited any "reference

whatsoever to the specifics of that alleged abuse, and especially as it relates to the victim in this case." RP at 753.

In opening argument, Acosta's counsel stated that Acosta "was molested by Wendy, and this continued at a young age and then just ended." RP at 45. Dr. Harris testified only that Dr. Muscatel's report noted a "history of sexual abuse in childhood, severe alcohol/drug abuse," and that a person is more vulnerable to many mental disorders if they have a history of sexual abuse. RP at 764.

Dr. Gleyzer's testimony on behalf of the State was also limited. In an offer of proof, Dr. Gleyzer testified that he really could not "think of how the fact that the uncle molested his niece is important for Mr. Acosta's diminished capacity [or] . . . affect[ed] his mental state at the time of the alleged offense in such a way that it impacted it." RP at 950.

The court excluded all testimony from Dr. Gleyzer about sexual abuse of the niece, and limited Dr. Gleyzer's testimony about Wendy's abuse of Acosta to "what's reflected in his report." RP at 981. In terms of James' alleged abuse of Acosta's niece, the court elaborated:

> [W]e have got both doctors now having said that that issue is not clinically significant to their diagnosis on diminished capacity [and] . . . any potential relevance related to this issue, [is] perhaps nonexistent. If there is any relevance, it's certainly overwhelmed by the danger of unfair prejudice and confusion on the part of the jury. So I would continue to exclude any references to that issue from the examination pursuant to rule 403.

RP at 982. Dr. Gleyzer testified before the jury only that "[Acosta's] sisters, as he stated it, did some sexual things to him when he was young." RP at 994.

Although the court specifically provided an opportunity, Acosta did not make an offer of proof as to the relevance of the sexual abuse information, and acknowledged only that his sister "did some sexual things to [him]." RP at 1186.

Acosta also asked the court to permit family members to testify regarding the sexual abuse within the family. The court gave Acosta the opportunity to provide an offer of proof for each of the proposed witnesses and Acosta did so, but the court refused to allow further testimony of other sexual abuse within Acosta's family.

### 2. Abuse of Niece by James McClearie

The court ruled that evidence of James' abuse of Acosta's niece was irrelevant, unduly prejudicial, would confuse the issues for the jury, and was "specifically designed to appeal to the passion and prejudice of the jurors and the sympathy of the jurors." RP at 832; ER 402, 403. We agree.

Neither expert relied on these facts to diagnose Acosta, so the evidence was not admissible under ER 703. Acosta implies that this information is relevant to establish his state of mind when he attacked Wendy. ER 404. But there is no logical relevance between James' past behavior towards Acosta's niece and Acosta's state of mind on the dates in question. ER 404(b).

In any case, the potential prejudice in admitting this evidence far outweighs any probative value it might have. ER 403. Additionally, the evidence confuses the issues and is misleading to the jury. ER 403. The record is sufficient to permit review by this court and the trial court did not err in suppressing this evidence. *Ellis*, 136 Wn.2d at 524.

### 3. Abuse of Acosta by Wendy

Similarly, testimony regarding Wendy's alleged abuse of Acosta was properly limited. Acosta introduced no evidence supporting his contention that Wendy's abuse instigated his attack, or that his history in any other way affected his mental state on the days in question. Thus there was no support for his assertion that the sexual abuse evidence was relevant to his state of mind on the days of his current offenses. ER 404(b).

Furthermore, the evidence played a minimal role in the expert's conclusions regarding Acosta's diminished capacity

defense. ER 703. The court properly concluded that the testimony was relevant only to the extent that it was communicated to the experts and played a role in their determination of diminished capacity, and appropriately limited the evidence.

Acosta also claims that Wendy's sexual misconduct should have been introduced under the res gestae exception to ER 404(b). This exception permits the admission of evidence of other crimes or misconduct where it is " 'a link in the chain' of an unbroken sequence of events surrounding the charged offense . . . 'in order that a complete picture be depicted for the jury.' " *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981)). The res gestae exception requires that evidence "be relevant to a material issue and its probative value must outweigh its prejudicial effect." *Brown*, 132 Wn.2d at 571.

Acosta argues that *State v. Elmore* should inform our decision. 139 Wn.2d 250, 985 P.2d 289 (1999). In *Elmore*, the trial court permitted evidence that the defendant had previously molested the victim because "the prior molestation played a significant role in the 'circumstances of the murder,' [so] its consideration by the jury was proper and necessary." 139 Wn.2d at 288 (citing *State v. Gentry*, 125 Wn.2d 570, 643, 888 P.2d 1105 (1995)).

This case is distinguishable. *Elmore* dealt with the defendant's admitted prior act, whereas here it is an alleged act by the victim. And in *Elmore*, evidence clearly indicated that Elmore and the victim discussed the prior molestation on the day of the crime, and that this discussion played into his decision to murder her. 139 Wn.2d at 288.

Here, Wendy denied that an argument took place about sexual abuse on the day of the crimes and the experts testified that Acosta only minimally discussed Wendy's conduct during their evaluations. Acosta did not offer any testimony to show why this testimony was relevant. Instead he testified that he had little memory of the events preceding his attack of Wendy. Because the sexual abuse

testimony had little or no relevance to Acosta's diminished capacity defense, and the court correctly decided that the testimony would be highly prejudicial, the res gestae exception is inapplicable here.

We thus reverse and remand based on the erroneous admission of the arrest and conviction evidence but affirm the trial court's rulings on admissibility of sexual abuse evidence.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, A.C.J., and BRIDGEWATER, J., concur.