# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. CHRISTOPHER KEFFELER, Appellant. | No. 80631-9-I DIVISION ONE UNPUBLISHED OPINION FILED: January 13, 2020 |

LEACH, J. — Christopher Keffeler challenges his conviction and sentence for felony harassment. He asserts that he received ineffective assistance of counsel because his trial attorney did not object to testimony about prior bad acts. And he claims that the trial court imposed an unconstitutionally vague community custody condition.

He did not receive ineffective assistance of counsel because the trial court was not likely to sustain an objection to the bad acts testimony. But because the condition prohibiting Keffeler from associating with "known drug users or sellers" is unconstitutionally vague, we remand for the trial court to address the invalid condition consistent with this opinion.

## BACKGROUND

On August 5, 2017, Melinda Hulin called the police after her fiancé, Christopher Keffeler, threatened her that day and the day before. Several Mason County sheriff deputies responded to the call. Keffeler allowed medics to transport him to the hospital for a mental health evaluation. After he was medically cleared for booking, an officer arrested him and transported him to jail. The State charged him with one count of domestic violence felony harassment with a domestic violence component.

At the trial, Hulin testified that on August 4, 2017, she, Keffeler, and a neighbor were having a conversation on their deck. At some point, Keffeler stood in front of Hulin, made a fist, and yelled at her to stand up. The neighbor left. Hulin described the following:

> [Keffeler] ended up telling me to take off my clothes and lay naked face down with my arms stretched out in front of me and my face face-down on the deck. He was sitting in front of me. He had a knife that he made; he has a rope and a leash; and, you know, saying that he didn't know which one he should use and that, you know, he could fillet me and the neighbors would come and feed on me, and said when you're about to die what do you do? You pray to God. And then he made, you know, he told me to pray to him as God for forgiveness. And then after that, you know, I mean, I ended up peeing myself it scared me so bad. And then he told me to get up, as Christopher [Keffeler], tells me to get up, put my clothes back on and go into the house where . . . it was safe . . . and we could talk.

The defense called forensic psychologist Dr. Brett Trowbridge as its expert witness. Trowbridge testified that he evaluated Keffeler and reviewed his mental health history. Based on this information, he concluded that Keffeler had

-2-

posttraumatic stress disorder (PTSD) and schizoaffective disorder. Trowbridge testified that he believed that at the time of the events, this mental illness significantly diminished Keffeler's capacity to form the mental state of knowledge necessary to commit felony assault.

During cross-examination, Trowbridge said he did not think a person's prior convictions of assault were relevant to a diminished capacity defense but that someone else might and it probably was a legal question. He testified that he reviewed records of prior convictions and that he believed Keffeler had been convicted previously of fourth degree assault. The prosecutor also asked whether Trowbridge recalled anything from Keffeler's clinical history about his "attitude toward and threats toward police officers." He referred to "Dr. Kirkeby and Dr. Lokhmotov's report" from a 2015 event and asked Trowbridge to read from a page in that report. Trowbridge read the following out loud:

> He's been in police custody for three days. He has a new person in his body named Jeff that has been telling him to get the police agitated to the point the [sic] would attack him and try to kill him, then Jeff would come out, changing into the form of The Hulk, but in fire form, and he would kill all the police, very calm and matter of fact telling his story.

(Alteration in original.)

The prosecutor also asked whether Trowbridge recalled seeing anything in Keffeler's clinical history "where he had thoughts about killing his stepmother." Trowbridge answered that "[a]t one point he was even hospitalized because he was feeling like killing her." Trowbridge agreed that, in the past, Keffeler "actually talked about not just killing evil entities but killing real people."

-3-

On redirect, Trowbridge agreed with the defense attorney's assertion that in the incident where Keffeler said he wanted to kill police, it was actually "Jeff," who also might emerge as "The Hulk," who was speaking. He also agreed with the defense attorney's statement that Keffeler admitted himself to the hospital when he threatened his stepmother. Defense counsel then elicited further testimony from Trowbridge about Keffeler's mental health issues, including multiple hospitalizations starting when he was a teenager.

In its rebuttal, the State called Dr. Roman Lokhmotov. He and another specialist had diagnosed Trowbridge with unspecified schizophrenia spectrum and did not evaluate him for PTSD. Lokhmotov did not agree with Trowbridge's conclusion that Keffeler's mental illness substantially diminished his ability to possess the mental state of knowledge at the time of the incident. He testified that despite his delusions, Keffeler "was able to know where he was, who he was speaking to and what the purpose of the evaluation was." He also testified that Keffeler "had knowledge of his ability to elicit fear in other persons or entities."

In closing, Keffeler's counsel summarized the defense that Keffeler's mental illness resulted in a diminished capacity and so he could not "form the knowledge" necessary for felony harassment. Defense counsel stated that Keffeler was "not knowingly making threats on [Hulin's] life. He was making threats on the entities that he perceived inside." Defense counsel concluded, "Mr. Keffeler was not a reasonable person at the time, and using this standard

you'd have to find him not guilty, [be]cause that's the standard for knowledge, which is the issue for you all to decide today."

The jury returned a guilty verdict. The court sentenced him, as a first time offender, to 90 days of confinement. A condition of community custody required that "[t]he defendant shall not associate with any known drug users or sellers, except in the context of a chemical dependency treatment program approved by the CCO [Community Custody Officer]."

Keffeler appeals his judgment and sentence.

## ANALYSIS

Keffeler claims that his attorney provided ineffective assistance because he did not object to trial testimony about Keffeler's prior assault conviction and statements about killing others.

We review claims of ineffective assistance of counsel de novo.[1] To succeed on an ineffective assistance of counsel claim, the appellant must establish that the trial attorney performed below an objective standard of reasonableness and that this failure resulted in prejudice.[2] This court strongly presumes that trial counsel provided effective representation.[3] The appellant may rebut this presumption only with a clear showing of incompetence.[4] "The decision of when or whether to object is a classic example of trial tactics. Only in

---

[1] State v. Feely, 192 Wn. App. 751, 768, 368 P.3d 514 (2016).
[2] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[3] State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d. 1251 (1995).
[4] State v. Varga, 151 Wn.2d 179, 199, 86 P.3d 139 (2004).

egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[5]

To convict Keffeler of harassment under RCW 9A.46.020, the State had to prove that he knowingly threatened to kill Hulin.[6] Rather than contest the facts, Keffeler asserted that his mental illness diminished his capacity to knowingly commit this crime. A diminished capacity defense challenges the culpability element of the crime.[7] A defendant asserting this as a defense to a charge of felony harassment must show that his diminished capacity prevented him from having the knowledge element of the crime.[8]

Keffeler asserts that his trial attorney's failure to object to evidence of three prior bad acts could not be part of a reasonable trial strategy. And he claims that the bad acts were not admissible under ER 404(b) because they were overly prejudicial and not relevant.

ER 404(a) states, "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." But ER 404(b) allows admission of this evidence for another purpose, for example, to establish that a defendant had the requisite state of mind at the time.[9] To be admissible to prove state-of-mind, it must be

_____

[5] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).
[6] RCW 9A.46.020(1)(a)(ii), (b), (2)(b)(ii).
[7] State v. Gough, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989).
[8] Gough, 53 Wn. App. at 622; see also State v. Swagerty, 60 Wn. App. 830, 833, 810 P.2d 1 (1991).
[9] State v. Fisher, 165 Wn.2d 727, 744, 202 P.3d 937 (2009).

"relevant under ER 401, and its probative value must outweigh the danger of unfair prejudice [as required by] ER 403."[10]

Trowbridge testified about the three bad acts at issue. Trowbridge read from a report describing an incident when Keffeler said he had "a new person in his body named Jeff" who wanted him to agitate the police so that they would attack him and then Jeff would change into the form of "The Hulk" and kill the officers. Trowbridge also described Keffeler's admission to the hospital that he felt like killing his stepmother. Finally, he testified about Keffeler's prior conviction for assault.

All three of these prior acts were relevant to the question of whether diminished capacity interfered with Keffeler's ability to form the requisite intent. Both the incident involving Keffeler's attitude toward the police and his admission to the hospital support defense's assertion that he suffered from mental illness. Indeed, defense counsel's questioning, on redirect, shows that defense counsel wanted the evidence admitted, albeit with a different narrative from what the State offered. He elicited testimony from Trowbridge that when Keffeler said he wanted to kill police, it was actually "Jeff" speaking, who also might emerge as "The Hulk," not Christopher Keffeler. And he elicited Trowbridge's agreement that Keffeler admitted himself to the hospital when he thought he might kill his stepmother. Defense counsel elicited additional testimony from Trowbridge

---

[10] State v. Acosta, 123 Wn. App. 424, 434, 98 P.3d 503 (2004); State v. Lough, 125 Wn.2d 847, 853, 889 P.2d 487 (1995).

about Keffeler's mental health issues, including multiple hospitalizations starting when he was a teenager.

The testimony about a conviction for fourth degree assault was relevant to the issue of the capacity to form the requisite state of mind because an element of fourth degree assault in Washington is intent.[11] And because the conviction occurred within five years of the crime charged, it was not so distant in time to make it irrelevant.[12]

None of the evidence of the three bad acts was more unfairly prejudicial than probative. The evidence describing Keffeler's statements about the police and the evidence that he was hospitalized when he wanted to kill his stepmother could be viewed as supporting his defense at trial. Because it could go to supporting Keffeler's defense argument, its probative value outweighed its prejudicial effect, which was minimal.

The testimony about the assault conviction was more prejudicial. But because it went to the central issue of Keffeler's capacity to form the requisite state of mind, it was probative. The fact that it occurred almost five years before the incident at issue reduced its probative value. But its prejudicial effect was also diminished because Trowbridge said he believed that Keffeler had a conviction but the court did not admit any record of the conviction as evidence.

---

[11] See, e.g., State v. Walden, 67 Wn. App. 891, 893-94, 841 P.2d 81 (1992).

[12] Cf. Acosta, 123 Wn. App. at 434-35 (pointing out that while some of the convictions and arrests were over two years old, many were more than a decade old and so did not provide insight into the state of mind during the offense charged).

Trowbridge said he did not think it was relevant to the issue of diminished capacity but that others might.

So it is unlikely that the trial court would have sustained an objection to this evidence. But even if the court would have, Keffeler does not establish that it was "testimony central to the State's case." So he fails to show prejudice from counsel's failure to object to this evidence.

Keffeler compares this case to State v. Acosta,[13] where, as in this case, the defendant asserted diminished capacity. The Acosta court concluded that evidence of 23 prior arrests and convictions, many dating back to more than a decade before the offense charged, was not relevant and was overly prejudicial.[14] In contrast to the evidence challenged here, the evidence against Acosta included unproved charges and convictions for crimes under California law that were "not comparable" to crimes under Washington law.[15] The evidence here was directly relevant to the question of Keffeler's capacity to form the requisite state of mind. And much of it could have been received by the jury as supporting Keffeler's defense by providing evidence of mental illness. So defense counsel's decision not to object can be viewed as a legitimate trial tactic.

We conclude that Keffeler failed to establish that his trial attorney provided ineffective assistance.

---

[13] 123 Wn. App. 424, 428-29, 434, 98 P.3d. 503 (2004).
[14] Acosta, 123 Wn. App. at 434-35.
[15] Acosta, 123 Wn. App. at 432.

## Community Custody Condition

Keffeler claims that the community custody condition restricting him from associating with known drug users or sellers is unconstitutionally vague.

We review community custody conditions for abuse of discretion and will reverse a manifestly unreasonable condition.[16] We do not presume that a community custody condition is constitutional.[17] A trial court's imposition of an unconstitutional condition is always manifestly unreasonable.[18]

The due process protections in the federal constitution and the Washington State Constitution require fair warning of proscribed behavior.[19] If a community custody does not provide this warning, it is unconstitutionally vague.[20] So a community custody condition must (1) "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed" and (2) "provide ascertainable standards of guilt to protect against arbitrary enforcement."[21] A community condition that implicates First Amendment rights, like the right of assembly, must be particularly clear so as not to "cause a chilling effect" on the implicated rights.[22]

---

[16] State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).
[17] State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010).
[18] Irwin, 191 Wn. App. at 652.
[19] U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3; State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008).
[20] Bahl, 164 Wn.2d at 752-53.
[21] Bahl, 164 Wn.2d at 752-53 (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).
[22] Bahl, 164 Wn.2d at 753.

A community custody condition is valid if, given the context in which its terms are used, a person of ordinary intelligence can understand what behavior it forbids.[23] The condition need not provide "complete certainty as to the exact point at which [the convicted person's] actions would be classified as prohibited conduct."[24] And a sufficiently clear condition can withstand a challenge of vagueness "'notwithstanding some possible areas of disagreement.'"[25]

Keffeler asserts that the word "known" is impermissibly vague in context. And he claims that the term "drugs" is vague because of the legalization of recreational marijuana in some states. We addressed these same claims in a case published last year, In re Personal Restraint of Brettell,[26] where the appellant challenged a community custody condition stating, "Do not associate with known users or sellers of illegal drugs." And we held in Brettell that a condition barring him from "associat[ing] with known users or sellers of illegal drugs" was not impermissibly vague.[27] Keffeler does not provide an argument sufficient to convince us that Brettell was incorrectly decided.

But the condition we reviewed in Brettell is not identical to the condition challenged here. Brettell complained about a condition that prohibited him from associating with "known users and sellers of illegal drugs."[28] Here, no adjective

---

[23] Bahl, 164 Wn.2d at 754.
[24] State v. Hai Minh Nguyen, 191 Wn.2d 671, 681, 425 P.3d 847 (2018).
[25] Bahl, 164 Wn.2d at 754 (quoting Douglass, 115 Wn.2d at 179).
[26] 6 Wn. App. 2d 161, 169, 173, 430 P.3d 677 (2018) (Keffeler does not mention Brettell, despite the fact that it is on point and is precedent in this court), review denied, No. 96677-0 (Wash. July 3, 2019).
[27] Brettell, 6 Wn. App. 2d at 169 (alteration in original).
[28] Brettell, 6 Wn. App. 2d at 172 (emphasis added).

modifies the word "drugs." So the condition can be read as prohibiting association with people using and selling both legal and illegal drugs. For example, a pharmacist, a cashier who regularly sells over the counter pain medicine, or a friend taking antibiotics are examples of legal drug users or sellers. Because this language is overbroad, the condition fails to provide notice to a person of ordinary intelligence of what it prohibits and risks arbitrary enforcement. We remand for the trial court so it can modify the condition to read "shall not associate with any known drug users or sellers of illegal drugs."

## CONCLUSION

Because the community custody condition is unconstitutionally vague, we vacate it and remand to the trial court to address it in a manner consistent with this decision. As Keffeler fails to establish his trial attorney provided ineffective assistance of counsel, we otherwise deny his request for relief.

_Leach, J._

WE CONCUR:

_Andrus, J._

-12-